**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation, and LABORATOIRES FOURNIER S.A., a French Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> TEVA PHARMACEUTICALS USA, INC., a Delaware corporation, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:08-cv-01243

Judge Grady
Magistrate Judge Denlow

**DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C.
§ 1404(a) IN LIEU OF ANSWERING**

Defendant, TEVA PHARMACEUTICALS USA, INC. ("Teva"), by its attorneys moves to transfer the present action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a), and submits the following Memorandum in support of its motion.

## I.    INTRODUCTION

Teva has been sued in two different courts based on a single alleged act of infringement - Teva's filing of Abbreviated New Drug Application (ANDA No. 90-069) under 21 U.S.C. § 355(j) (the Federal Food, Drug and Cosmetic Act § 525(j) "FFDCA"). Transfer of the Illinois Action to New Jersey will likely result in the consolidation of the two actions in New Jersey, thereby conserving judicial resources, conserving the resources of the litigants, and avoiding the risk of inconsistent findings of fact and conclusions of law. Transfer and the likely consolidation of the two actions is thus in the public interest and in the interest of the parties.

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

The plaintiffs in the Illinois Action are Abbott Laboratories ("Abbott") and Laboratoires Fournier S.A. ("Fournier S.A") (collectively, "the Plaintiffs").  Abbott's headquarters and principal place of business is Illinois.  (D.I. No. 1, ¶ 1).  Fournier S.A.'s principal place is in France.  (D.I. No. 1, ¶ 2).

The plaintiffs in the New Jersey Action are Elan Pharma International Ltd. ("Elan") and Fournier  Laboratories Ireland  Ltd. ("Fournier Ireland").  Elan's principal place of business is in Ireland.  (Exhibit (Ex.) 1, ¶ 2).  Fournier Ireland's principal place of business is in Ireland. (Ex. 1, ¶ 3).

Fournier S.A. and Fournier Ireland have a common parent, Solvay SA (D.I. No. 4; Ex. 2). Solvay is an international chemical and pharmaceutical group with headquarters in Brussels, Belgium.

Teva is the defendant in both the instant action and in the New Jersey Action.  Teva's headquarters is in North Wales, Pennsylvania.  Teva maintains a place of business in New Jersey (Ex. 3).

### B.    Abbott's and Teva's Fenofibrate Drug Products

Fenofibrate is useful as a lipid and cholesterol lowering agent for treatment of adults with increased triglyceride levels.  (D.I. No. 1, ¶ 11).  The FDA approved Abbott's New Drug Application ("NDA") No. 21-656 for TRICOR® tablets, which contain 145 mg of fenofibrate, under § 505(a) of the FFDCA. (Ex. 1, ¶¶ 11, 13).  FDA's Approved Drug Products with Therapeutic Equivalence Evaluations, commonly known as the "Orange Book" (Ex. 4) lists eight patents for TRICOR®, namely, U.S. Patent Nos. 6,277,405 ("the '405 patent") (Ex. 5),

6,375,986, 6,652,881, 7,037,529 ("the '529 patent") (Ex. 6), 7,041,319 ("the '319 patent")

(Ex. 7), 5,145,684 ("the '684 patent") (Ex. 8), 7,276,249 ("the '249 patent") (Ex. 9), and

7,320,802 ("the '802 patent") (Ex. 10). By this listing, the plaintiffs in both the Illinois Action

and the New Jersey Action contend that the eight patents cover the TRICOR® drug product

marketed under NDA No. 21-656.

Teva submitted ANDA No. 90-069 ("Teva's ANDA") to the FDA under § 505(j) of the

FFDCA seeking approval to engage in the commercial manufacture, use, and sale of Fenofibrate

Tablets, 145 mg ("Teva's Proposed Tablets") before expiration of all the patents listed in the

Orange Book (D.I. No. 1, ¶ 15; Ex. 11, ¶ 14). Teva's ANDA was prepared at and submitted

from Teva's headquarters in North Wales, PA. All of the development work leading to the drug

formulation disclosed in Teva's ANDA was performed in Israel. (Ex. 3).

Teva duly notified the plaintiffs in both the Illinois and New Jersey actions that Teva had

filed ANDA No. 90-069. Teva also duly notified plaintiffs in both actions that its ANDA

No. 90-069 included a Paragraph IV certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV)

which asserts that all of the patents listed in the Orange Book are not infringed by Teva's

Proposed Tablets or that the listed patents are invalid or unenforceable. (D.I. No. 1, ¶ 15;

Ex. 1, ¶ 15).

### C.    The Illinois Action

On February 29, 2008, Plaintiffs filed the Illinois suit charging Teva with infringement

under 35 U.S.C. § 271(e)(2) based on the submission by Teva of its ANDA No. 90-069.

Plaintiffs allege that Teva's Proposed Tablets infringe one or more claims of each of the '405,

'529 and '319 patents. (D.I. No. 1, ¶ 16). The Illinois Action does not charge Teva with

infringement of any of the other five listed patents.

The parties have stipulated that Teva will have until April 15, 2008, to answer the Complaint in this action. A copy of the Stipulation and Order was submitted electronically to Chambers on March 25, 2008.

### D.    The New Jersey Action

On February 29, 2008, Elan and Fournier Ireland sued Teva in the United States District Court for the District of New Jersey charging Teva with infringement under 35 U.S.C. § 271(e)(2) based on the submission by Teva of its ANDA No. 90-069. Elan and Fournier Ireland allege that Teva's Proposed Tablets infringe one or more claims of each of the '684, '249 and '802 patents under 35 U.S.C. § 271. (Ex. 1, ¶¶ 16-26). The New Jersey Action does not charge Teva with infringement of any of the other five patents.

Teva has answered the New Jersey Complaint denying its infringement of any claim of the '684, '249 and '802 patents and contending that the '684, '249 and '802 patents are invalid. (Ex. 11). As a result of the two separate actions, Teva is alleged to infringe six of the eight patents listed in the Orange Book.

### E.    The Illinois Action and the New Jersey Action
### Have Similar and Overlapping Issues

The Illinois Action and the New Jersey Action present similar and overlapping issues with respect to Teva's Proposed Tablets. Common issues include the composition of Teva's Proposed Tablets, the manner in which Teva's Proposed Tablets are made and physical and pharmaceutical properties of Teva's Proposed Tablets. Resolution of these issues will be required for all six of the patents-in-suit in both cases.

### 1.    The Patents-In-Suit in Illinois

The patents-in-suit in the Illinois Action are based on a parent application filed in the United States in 1998, which claimed priority to a French application filed in 1997 (Exs. 5-7)

4

("the Stamm Patents"). The two named inventors listed on the face of each of the patents-in-suit reside in of France and California. (Exs. 5-7).

The patents-in-suit each claim fenofibrate compositions that allegedly exhibit particular dissolution profiles. (D.I. No. 1, ¶ 10). Indeed, every claim of the '405 patent requires the claimed composition to have a defined property commonly understood as a dissolution profile. Claim 1 is illustrative:

> A composition comprising a hydrosoluble carrier and micronized fenofibrate *having a dissolution* of at least 10% in 5 minutes, 20% in 10 minutes, 50% in 20 minutes and 75% in 30 minutes, as measured using the rotating blade method at 75 rpm according to the European Pharmacopoeia, in a dissolution medium constituted by water with 2% by weight polysorbate 80 or with 0.025 M sodium lauryl sulfate.

(Emphasis added) (Ex. 5). In addition, the claims of the '405 patent, require that the fenofibrate is "micronized" and that the micronized fenofibrate be of a particular size.

Similarly, all of the claims of the '529 patent (Ex. 6) require the composition to have a defined dissolution profile property. The '529 patent also has claims which require the fenofibrate to be "micronized" and the "micronized" fenofibrate to have a particular size (claims 17, 18, and 72-74). Likewise, the claims of the '319 patent (Ex. 7) require the composition to have a dissolution profile property, and they require the composition to contain "micronized" fenofibrate that has a particular size (see, e.g., claims 1-3.)

### 2.    The Patents-In-Suit in New Jersey

The inventorship information on the face of the patents-in-suit in the New Jersey Action reveals that the two named inventors of the '684 patent reside in New York and Pennsylvania. Of the six named inventors of the '249 and '802 patents, one of the inventors of each patent resides in Ireland and five of the inventors of each patent reside in Pennsylvania.

5

As with the claims at issue in the Illinois Action, all of the patents that Teva is alleged to infringe in the New Jersey Action claim "particles" that contain particles of "fenofibrate" of particular size. Claim 1 of the '684 patent (Ex. 8) is illustrative:

> Particles consisting essentially of 99.9-10% by weight of a crystalline drug substance having a solubility in water of less than 10 mg/ml, said drug substance having a non-crosslinked surface modifier adsorbed on the surface thereof in an amount of 0.1-90% by weight and sufficient to maintain *an effective average particle size of less than about 400 nm.* (emphasis added) (Ex. 7).

Similarly, the composition claimed in every claim of the '249 patent (Ex. 9) must contain a fenofibrate of a defined particle size. Further, in every claim of the '802 patent (Ex. 10), the composition contains fenofibrate having a defined particle size. Claim 1 of the '802 patent's 396 claims is illustrative:

> A method of treating ..., wherein: (a) the composition comprises particles of [fenofibrate] ... *having a D50 particle size of less than 500 nm* and at least one surface stabilizer...

(emphasis added) (Ex. 9). In addition, many of the claims of the '249 patent and many of the claims of the '802 patent require the composition to have a specific dissolution property (Exs. 9 and 10).[1]

### 3.     The Infringement Issue

The question of whether Teva's Proposed Tablets infringe the asserted patents is expected to depend, in part, on factual findings regarding the manner in which Teva's product is made, and analytical analyses of Teva's Proposed Tablets, including particle size analysis of fenofibrate in particulate form, if any, in Teva's Proposed Tablets, and the dissolution properties of its Proposed Tablets. Legal issues regarding claim construction of the patents in suit will also have to be decided.

---

[1] For example, claims 36-50 of the '249 patent and claims 36-40 of the '802 patent.

**F.    Prior Fenofibrate Litigation Between the Parties in the Third Circuit**

In October 2002, Abbott and Fournier S.A. sued Teva in the U.S. District Court for the

District of Delaware for patent infringement based on Teva's filing of its ANDA No. 76-433.

Plaintiffs charged Teva with infringement of, *inter alia*, one of the patents-in-suit at issue here -

the '405 patent. *See Abbott Lab. v. Teva Pharm. USA, Inc.*, No. 02-1512-KAJ, 2005 WL

1026746, at *1 (D.Del. April 22, 2005) ("the Delaware Action") (Ex. 12).  Teva initially moved

to transfer the Delaware Action to the Northern District of Illinois because Teva was also

charged with infringing U.S. Patent 4,895,726, a patent which had been the subject of a prior

action in this Court (see *Abbott Lab. et al. v. Novopharm Ltd.*, 2002 WL 433584 (N.D. Ill.,

March 20, 2002), *affirmed* 323 F.3d. 1324 (Fed. Cir. 2003); Ex. 13) between Abbott, Fournier,

and Novopharm, a Teva subsidiary.  However, both Abbott and Fournier S.A. - the same

plaintiffs to the instant action - opposed the transfer, arguing that Delaware was the proper forum

for litigating the '405 patent and other Stamm patents.  (Ex. 14).

## III.    LEGAL PRINCIPLES

Title 28 United States Code, § 1404(a) provides:

> [f]or the convenience of parties and witnesses, in the interest of
> justice, a district court may transfer any civil action to any other
> district or division where it might have been brought.

28 U.S.C. § 1404 (a).

Transfer of venue is proper if the movant establishes that the case might have been

brought in the transferee district, that transfer is for the convenience of parties and witnesses, and

that transfer is in the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220

(7th Cir. 1986).  Section 1404(a) does not indicate the relative weight to afford to each of these

factors. *See Id.* at 219, n. 3.  Rather, the assessment of the relevant factors includes "a large

7

degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219; *see also Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (noting that the remedial purpose of § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness").

The movant bears the burden of establishing that "the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another." *Moore v. Motor Coach Industries, Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007). In determining which forum is more convenient, the court must consider the private interests of the parties. In analyzing the parties' private interests, the court should consider (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; and (4) the convenience of the witnesses. *Id.* at 1008. In assessing the convenience of the parties, the court is to consider the parties' respective residences and their abilities to bear the expense of litigating in a particular forum. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F. Supp. 2d 821, 834 (N.D.Ill. 1999). The convenience of non-party witnesses should be accorded greater weight than the convenience of party witnesses. *Moore,* 487 F. Supp. 2d at 1008.

The "interest of justice" focuses the inquiry on judicial economy, not on the merits of the underlying dispute. *Coffey,* 796 F.2d at 221. Relevant considerations in the interest of justice analysis include the forum's relationship to the cause of action and the court's familiarity with the applicable law. *Plotkin v. IP Axess, Inc.,* 168 F. Supp. 2d 899, 904 (N.D. Ill. 2001).

Furthermore, the court should weigh the feasibility of consolidation of related litigation. *Coffey,* 796 F.2d at 221. Indeed, when a case is transferred to a district where related litigation is pending, there is the expectation of the consolidation of these cases under Rule 42(a) of the

Federal Rules of Civil Procedure. *Abbott Lab. v. Selfcare, Inc.*, No. 98-C-7102, 1999 WL

162805, at * 2 (N.D. Ill. March 15, 1999) (Ex. 15). Transfer and consolidation is desirable for

preventing inconsistent judgments and eliminating duplicative litigation, which conserves both

the court's and the litigants' resources. *Id.*

Moreover, the Supreme Court has called for a common-sense approach in applying

Section 1404(a), *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 24-25 (1960), which the

Supreme Court said was designed to prevent

> a situation in which two cases involving precisely the same issues
> are simultaneously pending in different District Courts [which]
> leads to the wastefulness of time, energy and money...

*Id.* at 26. This admonition is particularly relevant here, given that the fact findings related to

manufacture, composition and properties of Teva's Proposed Tablets drug product will be

required in both actions.

## IV.    ARGUMENT

### A.    Plaintiffs Could Have Brought the Instant Suit in New Jersey

The Illinois Action could have been brought in New Jersey. Teva has had systematic and

continuous contacts with New Jersey and, as noted above, has a place of business in New Jersey.

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Thus, the District Court in New

Jersey has personal jurisdiction over Teva, and it has subject matter jurisdiction since the Illinois

Action is a patent infringement case based on 35 U.S.C. § 271(e)(2). See 28 U.S.C. §§ 1331,

1338(a). Venue in New Jersey is also a proper under 28 U.S.C. §1391(c).

**B.**    **The Balance of the Convenience Factors In Relation to the Parties and Witnesses Favors Transfer To New Jersey**

**1.**    **The Plaintiffs' Choice of Forum is Not Dispositive**

While the Supreme Court has stated that "the plaintiff's choice of forum should rarely be disturbed," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), the Seventh Circuit has noted that "rarely" is not *never*. See, *In re National Presto Industries, Inc*, 347 F.3d 662, 664 (7th Cir. 2003). Indeed, the plaintiff's choice of forum can become largely irrelevant where, as here, the interests of justice, especially judicial economy, demand a transfer. *Abbott Lab.,* 1999 WL 162805, at * 3.

Clearly, the only connection that this action has to Illinois is that one of the parties - Abbott - has its headquarters within this District. However, Abbott's presence in Illinois should be given little, if any, weight. In the last year alone, Abbott elected to file two other Hatch-Waxman actions under 35 U.S.C. § 271(e)(2) in the District of New Jersey (Exs. 16 ¶ 19;17 ¶ 17). Abbott's selection of the District of New Jersey for Hatch-Waxman litigation reveals that Abbott is not only comfortable litigating ANDA cases such as this one in New Jersey, it reveals that Abbott is not inconvenienced by litigation in New Jersey.

**2.**    **The Situs of Material Events Favor Transfer**

The situs of the material events. Neither Teva's proposed formulation nor its ANDA, nor even the "invention" of Plaintiffs' patents, has any connection with Illinois. Indeed, Abbott *opposed* transfer of the 2002 Delaware case to the Northern District of Illinois arguing:

> because Abbott neither provided the inventors on the ['405 patent]
> nor manufactures the marketed products, Abbott among all the
> parties to this case, is the least likely to have witnesses with
> information to this suit.

(Ex. 14, at 22).

TRICOR® is manufactured for Abbott presumably by Fournier S.A. and Fournier Ireland - both European companies. (Ex. 18, at 12). It appears from the pleadings that events relevant to the invention of the patents-in-suit in the Illinois Action occurred primarily in California and France. Further, Teva's headquarters is in North Wales, Pennsylvania (within the 100 mile "bulge" of all courthouses in the District of New Jersey), the situs of the preparation of Teva's ANDA is in Pennsylvania, and the situs of the development work leading to the pharmaceutical products which are the subject of Teva's ANDA was conducted in Israel. (Ex. 3). While discovery of Abbott will likely be in Illinois, the discovery is most likely to be related to Teva's defenses to the charge of infringement, and does not make the New Jersey court any less convenient to Abbott. Thus, transfer of the Illinois Action from Illinois to New Jersey is not merely one of shifting conveniences of the parties, and transfer is warranted. *See GEN 17, Inc. v. Sun Microsystems, Inc.*, 953 F. Supp. 240 (N.D. Ill. 1997).

### 3.    The Convenience of the Parties Favors Transfer

Since Teva's principle place of business is within 100 miles of all of the courthouses (Camden, Newark, and Trenton) of the US District Court for the District of New Jersey, litigating in New Jersey is far more convenient for Teva than is litigating in Chicago.

Fournier S.A. is represented by the same attorneys in the Illinois Action (D.I. 1, p. 5), as represent Fournier Ireland in the New Jersey Action (*see* Ex. 2). Thus, Fournier can hardly deny that New Jersey is at least as convenient as is Chicago. Moreover, Fournier S.A. is a French company; therefore, convenience to Fournier is significantly influenced by the length and availability of transatlantic flights to and from France. Litigating this action in New Jersey as opposed to Chicago offers the opportunity to reduce transatlantic flight to and from France by at least 1-2 hours. Additionally, there are many more options for transatlantic flights into and out of the mid-Atlantic area than there are for O'Hare, there being sizable international airports in

11

New York, Newark, Philadelphia, Baltimore, and Washington, DC – all within reasonable

proximity both to the New Jersey courthouses and to Fournier's counsel's offices in

Washington, DC.

These facts reveal New Jersey to be a more convenient forum for at least two of the three

parties to this action - Teva and Fournier - than is Illinois.  Any argument that Abbott might

advance to the effect that New Jersey is less convenient for Abbott runs counter to Abbott's

repeated and recent actions in choosing to litigate similar Hatch-Waxman patent infringement

actions in New Jersey.  (Ex. 16, 17).  It is plain that Abbott is a large corporation that can readily

bear the costs of litigating in New Jersey, and indeed Abbott has availed itself of the New Jersey

venue when it wishes.  Thus, Abbott's choice of forum is of less importance in the analysis. *See*

*Clearclad Coatings, Inc. v. Xontal, Ltd.*, No. 98 C 7199, 1999 WL 652030, at * 9 (N.D. Ill.

August 20, 1999) (Ex. 19).

It also is telling that both Abbott and Fournier previously chose to assert the Stamm

patents (including the same '405 patent at issue here) against Teva in Wilmington, Delaware

(*Abbott Lab.*, 2005 WL 1026746, at *1 (Ex. 12); Ex. 14), which is geographically close to the

District of New Jersey.  Both courts are within the Third Circuit.

These factors reveal that Abbott and Fournier S.A. regard litigation in the Third Circuit,

mid-Atlantic region to be convenient for ANDA lawsuits in general, and for the patents-in-suit in

particular.  Thus, New Jersey is a more convenient forum for this action than is Illinois.

4.    **The Convenience of the Witnesses Favors Transfer to New Jersey**

The named inventors of the patents-in-suit in the Illinois Action reside in, and their work

on the invention occurred in, California and France.  The development of Teva's Proposed

Tablets took place in Israel.  Given the inventorship and manufacturer of TRICOR®, the

preponderance of the likely witnesses will have to cross the Atlantic from Europe and the Middle East.

The patents-in-suit are based on a French application filed in 1997. (Exs. 5-7). Because over a decade has passed since the French application was filed, it is likely that some of the fact witnesses are no longer employed by Fournier S.A., but still reside in France. Indeed, during the prior Delaware Action involving the '405 patent, Teva discovered this to be so. Since the convenience of the witnesses is significantly influenced by the length of, and options for, their transatlantic flights, New Jersey will be far more convenient for French witnesses.

One witness, Pawan Seth (co-inventor of the Stamm patents) is believed to still reside in California. Teva was able to conduct third party discovery in the Delaware Action involving the patents-in-suit with no inconvenience to Dr. Seth attributed to the East-coast venue. Dr. Seth was deposed in California, and his Washington DC-based counsel (who represent Fournier S.A. in this very action) were able to defend him and coordinate written discovery from Dr. Seth's files. A New Jersey forum will not be any less convenient for Dr. Seth than Illinois.

## C.    The Interest of Justice Favors Transfer to New Jersey

The "interest of justice" may be determinative of a transfer motion under § 1404(a) in a particular case, even if the convenience factors call for a different result. *Coffey,* 796 F.2d at 220. Transfer of this action will serve the interest of justice by allowing the present action to be consolidated with the related New Jersey Action.

### 1.    Transfer to New Jersey will Facilitate Consolidation of the Related Actions

There is an expectation that, upon transfer to New Jersey, the present action will be consolidated with the related New Jersey Action under Fed.R.Civ.P. 42(a). Consistent with this, the Local Rules of the District of New Jersey provide that "Whenever possible, such action shall

13

be assigned to the same Judge to whom the pending related action is assigned." (D.N.J. L.Civ.R. 40.1(c) (Ex. 20)).  Clearly, the reason for such rules is to avoid the possibility that judicial resources as well as the litigants' resources will be squandered litigating related actions in separate courts and the attendant risk of inconsistent factual findings and legal conclusions.  This is precisely the burden and risk that transfer of the present action to New Jersey will avoid.  In fact, "[t]hese concerns 'have led this district to adopt a strong policy in favor of transferring a case to the district where a related action is pending.'" *Abbott Lab.*, 1999 WL 162805, at *2 (emphasis added, citation omitted) (Ex. 15 ).

Both the Illinois and New Jersey Actions grow out of the same transaction - the submission of Teva's ANDA for its Proposed Tablets to the FDA.  Moreover, resolution of the infringement issues relating to the patents asserted in the Illinois Action and to the patents asserted in the New Jersey Action are expected to address the same factual inquires with regard to Teva's Proposed Tablets: *e.g.,* (a) the manner in which Teva's Proposed Tablets are made, (b) their dissolution profile, (c) whether the fenofibrate in Teva's Proposed Tablets is micronized, (d) whether the fenofibrate in Teva's Proposed Tablets is particulate, and (e) the size of particulate fenofibrate (if any)[2] in Teva's Proposed Tablets.  These two actions are exactly the type of actions that should be consolidated under the District of New Jersey's Local Civil Rules (Ex. 25).  In the absence of transfer, both the Illinois and New Jersey Courts will most certainly waste judicial resources in trying the same facts in two different actions and deciding the issues. Transfer is clearly in the interest of justice.

---

[2] Teva contends that fenofibrate in solid solution is neither "micronized," nor particulate - another potential fact issue that would have to be resolved during litigation.

14

### 2.    Consolidation is Fairer to Teva

The likely consolidation of the actions in the District of New Jersey also will result in a single action with one schedule for fact and expert discovery to address all technical issues concurrently through a streamlined and coordinated process.  Absent transfer, Teva's fact witnesses, and its expert witnesses will likely have to undergo multiple depositions and trials to address issues that are common to all the patents asserted here and in the New Jersey Action.

### 3.    New Jersey is the Best Forum for a Consolidated Action

A consideration of where *consolidation* is most convenient is consistent with the common sense focus on judicial economy in the application of Section 1404(a) called for by the Supreme Court and recognized by the Seventh Circuit.  *Continental Grain*, 364 U.S. at 24-25; *Coffey*, 796 F.2d at 221.  As noted above, New Jersey is a convenient forum for all parties to this action and third-party witnesses, and is the best forum for this action and for consolidation.

## V.    CONCLUSION

For each and all of the foregoing reasons, Teva respectfully submits that its Motion should be granted and requests an Order transferring this lawsuit to New Jersey or, alternatively, granting Teva leave to file an Answer or otherwise plead, following determination of this Motion.

Respectfully submitted,
LEYDIG, VOIT & MAYER, LTD.

Date: March 31, 2008

By:/s/ Bruce M. Gagala
Bruce M. Gagala
M. Daniel Hefner
Douglas A. Robinson
Peter H. Domer
Two Prudential Plaza - Suite 4900
Chicago, Illinois  60601-6780
(312) 616-5600 (tel)/(312) 616-5700 (fax)
Email: pdomer@leydig.com
*Attorneys for Defendant Teva*

## CERTIFICATE OF SERVICE

I hereby certify that I have personal knowledge that on March 31, 2008 the foregoing

DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a) IN LIEU OF ANSWERING

was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

Stephanie S. McCallum
James F. Hurst
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-5600
Email: jhurst@winston.com
Email: smccallum@winston.com
ATTORNEYS FOR ABBOTT LABORATORIES

Chad J. Peterman
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Email: cjpeterman@pbwt.com
ATTORNEY FOR ABBOTT LABORATORIES

Peter J. Meyer
STEPTOE & JOHNSON LLP
115 South LaSalle Street
Chicago, Illinois 60603
(312) 577-1300
Email: pmeyer@steptoe.com
ATTORNEY FOR LABORATOIRES FOURNIER S.A.

I further certify that I caused to be emailed and shipped via FedEx the foregoing documents and the notice of electronic filing to:

Chad J. Peterman
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Email: cjpeterman@pbwt.com

ATTORNEY FOR ABBOTT LABORATORIES

Timothy C. Bickham
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
Email: tbickham@steptoe.com
ATTORNEY FOR LABORATOIRES FOURNIER S.A.


DATE:  March 31, 2008

Peter H. Domer
Attorney for Defendant Teva
Pharmaceuticals USA, Inc