# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT LABORATORIES, et al., | |
| Plaintiffs, | |
| v. | C.A. No. 02-1512(# # #) (MPT) |
| TEVA PHARMACEUTICALS USA, INC., | |
| Defendants. | |

**PLAINTIFFS' ANSWERING BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**

OF COUNSEL:
James A. White
John A. Marlott
Timothy J. Heverin
Matthew D. Kellam
JONES DAY REAVIS & POGUE
77 West Wacker
Chicago, IL 60601
(312) 782-3939


OF COUNSEL:
Charles D. Ossola
Timothy C. Bickham
Scott A.M. Chambers
ARNOLD & PORTER
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, DC 20004-1202
(202) 942-5000

Mark R. Shanks
SHANKS & HERBERT
TransPotomac Plaza
1033 N. Fairfax St., Suite 306
Alexandria, VA 22314
(703) 683-3600

November 25, 2002

MORRIS, NICHOLS, ARSHT & TUNNELL
Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
    ATTORNEYS FOR PLAINTIFF
    ABBOTT LABORATORIES


RICHARDS, LAYTON & FINGER
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
One Rodney Square
Wilmington, DE 19899
(302) 651-7700
    ATTORNEYS FOR PLAINTIFFS
    FOURNIER INDUSTRIE ET SANTÉ AND
    LABORATOIRES FOURNIER S.A.

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CITATIONS | iii |
| INTRODUCTION | 1 |
| NATURE AND STAGE OF THE PROCEEDINGS | 3 |
| SUMMARY OF ARGUMENT | 3 |
| STATEMENT OF FACTS | 4 |
| A. THE FENOFIBRATE PRODUCTS AND RESPECTIVE ROLES OF THE PLAINTIFFS. | 4 |
| B. LITIGATION IN CHICAGO INVOLVING ANDAS FOR FENOFIBRATE CAPSULES. | 5 |
| C. THE DELAWARE ACTION INVOLVING TEVA'S ANDA FOR TABLETS. | 7 |
| ARGUMENT | 8 |
| I. NO JUDICIAL ECONOMY OR TRIAL EFFICIENCIES WOULD BE GAINED BY TRANSFER. | 8 |
| A. Teva Wrongly Assumes That Transfer To Chicago Would Result In Assignment Of This Case To Judge Darrah. | 8 |
| B. The Parties' Accused Products And (Two of the Three) Asserted Patents In This Case Are Different From Those In The Previous Litigation. | 12 |
| 1. The Parties. | 13 |
| 2. Accused Products. | 13 |
| 3. Patents. | 14 |
| C. The Antitrust Counterclaims In Delaware Raise Issues Unrelated To The Chicago Capsule Litigation. | 15 |
| D. No Discovery Efficiencies Would Result If This Case Were Transferred. | 16 |

TABLE OF CONTENTS (Continued)

|  |  |  | Page |
|---|---|---|---|
| | E. | Teva's Claim That Trial Will Occur Faster In The Northern District Of Illinois Is Without Support. | 17 |
| II. | | THE ALLEGED CONVENIENCE TO THE PARTIES DOES NOT SUPPORT TRANSFER. | 18 |
| | A. | The Parties Are Multi-National Corporations Who Will Not Be Inconvenienced In Delaware. | 19 |
| | B. | Costs of Travel, Document Shipping and Local Counsel Are Insignificant. | 19 |
| | C. | Witnesses Would Not Be Inconvenienced. | 21 |
| | D. | A Delaware Corporation Will Not Be Inconvenienced By Having to Litigate In Delaware. | 23 |
| III. | | PLAINTIFFS' CHOICE OF FORUM SHOULD BE GIVEN PARAMOUNT CONSIDERATION. | 23 |
| CONCLUSION | | | 25 |

TABLE OF AUTHORITIES

Cases

Ade Corp. v. KLA-Tencor Corp.,
     138 F. Supp. 2d 565 (D. Del. 2001)                                      20

AlliedSignal Inc. v. Hoechst Celanese Corp.,
     97-508 (SLR) (D. Del. June 8, 1997)                                     12

Bergman v. Brainin,
     512 F. Supp. 972 (D. Del. 1981)                                          8

C.R. Bard, Inc. v. Guidant Corp.,
     997 F. Supp. 556 (D. Del. 1998)                                          8

Clontech Labs., Inc. v. Life Tech., Inc.,
     98-750 (SLR) (D. Del. April 29, 1999)                                    8

Continental Cas. Co. v. American Home Assurance Co.,
     61 F. Supp. 2d 128 (D. Del. 1999)                                        8

Critikon, Inc. v. Becton Dickson Vascular Access, Inc.,
     821 F. Supp. 962 (D. Del. 1993)                                         23

Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,
     01-199 (SLR) (D. Del. Nov. 28, 2001                               12, 19, 21

Datex-Ohmeda, Inc. v. Hill-Rom Serv., Inc.,
     185 F. Supp. 2d 407 (D. Del. 2002)                               15, 19, 21

EMC Corp. v. Storage Tech. Corp.,
     94-482 (JJF) (D. Del. June 16, 1995)                                    12

Grube v. Lan Indus., 257 F.3d 723, 731 (7th Cir. 2001)                       10

In re ML-Lee Acquisition,
     816 F. Supp. 973 (D. Del. 1993)                                         24

Intel Corp. v. Broadcom Corp.,
     167 F. Supp. 2d 692 (D. Del. 2001)                                      23

Invitrogen Corp. v. Incyte Genomics, Inc.,
     2002 U.S. Dist. LEXIS 8118 (D. Del. May 1, 2002)                        11

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)            8, 21

Lucas Aerospace, Ltd. v. Unison Ind.,
     93-525 (JJF) (D. Del. Dec. 30, 1994)                                    13

TABLE OF AUTHORITIES (Continued)

Case                                                                    Page(s)

Merck v. Teva,
    C.A. No. 00-035-JJF (D. Del. November 4, 2002)                     23

Novartis Seeds, Inc. v. Pioneer Hi-Bred Int'l, Inc.,
    1997 WL 852110 (D. Minn. 1997)                                      12

Novo-Nordisk v. Bio Technology General Corp. and Teva,
    207 F.Supp. 2d 322 (D. Del. 2002)                                   23

Pall Corp. v. PTI Tech., Inc.,
    992 F. Supp. 196 (E.D.N.Y. 1998)                                  12, 14

Square D Co. v. Medar, Inc.,
    36 USPQ2d 1123 (D. Del. 1994)                                     12, 19

Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,
    157 F.R.D. 125 (D. Del. 1993)                                     20, 23


Statutes

21 U.S.C. § 355(j)(2)(B)(i)                                                 7

28 U.S.C. § 1404(a)                                                        1

35 U.S.C. § 271(e)(2)                                                       5

INTRODUCTION

Plaintiffs filed this patent infringement action against Teva Pharmaceuticals USA, Inc. ("Teva USA"), a Delaware corporation with its principal place of business in North Wales, Pennsylvania, less than fifty miles from this courthouse. Teva does not, and cannot, contend that either jurisdiction or venue is improper in this Court. Rather, its motion to transfer under 28 U.S.C. § 1404(a) relies in large part on: (1) the location of the corporate headquarters of one of the plaintiffs in this case (Abbott Laboratories) within the boundaries of the Northern District of Illinois; and (2) alleged efficiencies that Teva contends would accrue from transfer because an earlier case in the Northern District of Illinois (now on appeal) concerning one of the three patents-in-suit here was brought by Plaintiffs against a different defendant over a different proposed generic fenofibrate product (the "Chicago Capsule Litigation"). For a host of reasons, Plaintiffs' admittedly valid choice of forum should not be disturbed and Teva's motion should be denied.

Teva's hypothesized efficiencies are all founded on the assumption that the same judge that heard the Chicago Capsule Litigation -- Judge Darrah --would be assigned this case were it transferred to the Northern District of Illinois. In fact, application of the Local Rules of the Northern District (which Teva ignores in its brief) would result in a less than one-in-twenty chance that Judge Darrah would be assigned the new case. Absent such an assignment, all of Teva's imagined judicial efficiencies evaporate.

Even were Judge Darrah to receive the case by random chance, however, the differences between the present case and the Chicago Capsule Action far outweigh any similarities. Preliminarily, there is no pending Chicago Capsule Action in Chicago.

It is on appeal by Plaintiffs, fully briefed and set for argument on January 6, 2003. Should Judge Darrah's claim construction be affirmed, there will be nothing further for Judge Darrah and Plaintiffs will dismiss their '726 claim from the present case.

The presence of the '726 patent is the sole point of commonality between the Chicago Capsule Litigation and the present case. In contrast, the features unique to the present case include: (1) a different accused product (Teva's proposed generic fenofibrate tablet); (2) a different Abbreviated New Drug Application (ANDA) than Novopharm's capsule ANDA at issue in the Chicago Capsule Litigation; (3) claims of inequitable conduct relating to the '726 patent; (4) issues of validity and infringement of two additional patents (with different inventors than the '726 patent); and (5) antitrust counterclaims by Teva purportedly based on Plaintiffs' decision to bring the present suit.

Nor does Teva's assertion that the case must be transferred to Chicago in order to ensure a speedy resolution ring true. In the Chicago Capsule Litigation, the agreed schedule provided for trial some 25 months after the litigation was initiated. Teva proffers no facts to indicate that a trial here would be scheduled any later than a trial on a transferred case in Chicago.

Finally, the private interests of the parties provide no basis for disturbing Plaintiffs' valid choice of forum. Teva USA's headquarters is located only 49 miles from this courthouse (approximately the same distance as Abbott's headquarters from the United States courthouse in Chicago), while its only alleged corporate presence in Illinois is one full-time sales representative. Counsel for the parties are relatively equally distributed in Chicago and on the East Coast. Likely witnesses are located within trial subpoena range of both courts.

NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Abbott Laboratories ("Abbott"), and Fournier Industrie et Santé and Laboratoires Fournier S.A. (collectively "Fournier"), filed this action on October 4, 2002 against Teva USA.  Teva USA moved to transfer to the Northern District of Illinois on November 8, 2002.  Teva USA filed an answer and antitrust and other counterclaims on November 15, 2002, with its ultimate corporate parent joining in the antitrust counterclaims.  This is Plaintiffs' answering brief in opposition to Teva USA's motion to transfer.

SUMMARY OF ARGUMENT

1.    No judicial economy or trial efficiences could be gained by transfer.  The case is highly unlikely to be assigned to the judge in the Chicago Capsule Litigation, contrary to the asserted underpinning of Teva's motion. Moreover, the parties, accused products and two of the three asserted patents are different from the Chicago Capsule Litigation, while Teva's new antitrust counterclaims raise issues not present in Chicago.

2.    There is no greater convenience to the parties in litigating in Chicago in this case.  Actually, there is greater convenience to Teva in Delaware, which is very near Teva's headquarters.

3.    Plaintiffs' choice of forum in Delaware, where Teva USA is incorporated, should be given paramount consideration.

## STATEMENT OF FACTS

A.    THE FENOFIBRATE PRODUCTS AND RESPECTIVE
      ROLES OF THE PLAINTIFFS.

Fournier is a French pharmaceutical firm that has done significant work developing and manufacturing innovative drug formulations which use fenofibrate as their active ingredient. It is known that fenofibrate is useful to treat hyperchlorestolemia, which is an elevation of "bad" cholesterol, which can lead to heart disease. Because fenofibrate suffers from the disadvantage of being poorly soluble and therefore having poor bioavailability in people, there was a need to develop formulations of fenofibrate that would overcome those problems. Fournier's novel formulations of fenofibrate have successfully met that need and provide therapeutic benefits. In the United States, fenofibrate drug products developed and manufactured by Fournier are marketed by Abbott under the name TRICOR®.

Abbott obtained approval from the FDA for two different New Drug Applications (NDAs) for fenofibrate drug products. The first was for fenofibrate capsules to treat hypercholesterolemia by reducing, among other things, elevated LDL-C ("bad" cholesterol). (Ex. 1, attached hereto.) The second NDA was for fenofibrate tablets, approved to treat hypercholesterolemia not only by reducing bad cholesterol, but by increasing HDL-C ("good" cholesterol). (Ex. 2, attached hereto.) In addition, TRICOR® tablets have improved bioavailability over the TRICOR® capsules, and therefore the tablets are available in smaller dosage sizes than the capsules (160 vs. 200 mg for example), while the tablets provide the same therapeutic effect as the capsules.

There are three patents-in-suit in the current case. None has inventors that were ever associated with Abbott. The '726 patent was issued to three Fournier scientists.

(Ex. 3, attached hereto.)  The '670 and the '405 patents were issued to the non-Fournier

inventors, Pawan Seth of Irvine, California, and André Stamm of Griesham, France.  (Ex.

4, 5, attached hereto.)  Fournier is the assignee of both these patents.  Fournier has

licensed all three of the patents-in-suit to Abbott in the United States.

B.     LITIGATION IN CHICAGO INVOLVING ANDAS FOR
       FENOFIBRATE CAPSULES.

Two generic companies proceeded with ANDAs for fenofibrate capsules -

- Novopharm, Ltd., and Impax Laboratories, Inc.[1]  Abbott brought suit on the '726 patent

against Novopharm on April 7, 2000 in Chicago after Novopharm sent a letter to Abbott

indicating its intent to seek approval of a generic version of the Abbott/Fournier 67 mg

TRICOR® capsule.  Fournier joined the suit soon thereafter.  The suit was originally

assigned to Judge Milton Shadur, but when a new judge was confirmed -- Judge John W.

Darrah -- the case was reassigned to him.  (White Aff. ¶ 3, attached hereto at Ex. 6.)

After the initial suit was brought, Novopharm made two further Paragraph

IV certifications for different capsule TRICOR® dosages of 134 and 200 mgs.  Each time

Novopharm made a new certification, Abbott and Fournier filed a new suit in the

Northern District of Illinois, also on the '726 patent.[2]  (Id. at ¶ 4.)

---

[1]    Teva does not contend that the Impax litigation is relevant to support the present
       motion.  Plaintiffs agree.

[2]    The decision to file separate lawsuits on the new capsule dosage sizes, rather than
       to amend the original complaint, was driven by the Hatch-Waxman provision, 35
       U.S.C. § 271(e)(2), which requires that an infringement action must be initiated
       by suit brought within 45 days of receipt of notice from a generic ANDA filer.
       Thus, Plaintiffs brought the new claims through new lawsuits.

Following the case assignment rules of the Northern District, each of the follow-on suits involving the different capsule dosage sizes was assigned by the Clerk's office to a different judge. Relying on Local Rule 40.4, Abbott and Fournier moved to have these new cases reassigned to Judge Darrah. Novopharm consented to the motions and Judge Darrah transferred the cases, later consolidating them. (<u>Id.</u> at ¶ 5).

The consolidation had no effect on the case schedule that the parties had jointly presented to the Court or on the disposition of the Chicago Capsule Litigation (<u>Id.</u> at ¶ 6). On November 28, 2000, Judge Darrah entered a Scheduling Order, setting the case (which then encompassed two of the three dosage sizes) for trial on May 6, 2002, some 25 months after the original case was filed.

Judge Darrah issued one substantive ruling in the consolidated cases. There was only one discovery dispute between the parties that required the Court's decision, and that was a purely procedural question -- whether Plaintiffs should be required to produce 30(b)(6) infringement contention witnesses prior to expert discovery. (<u>Id.</u> at ¶ 7). Judge Darrah denied Novopharm's motion. The Court's single substantive ruling came on March 19, 2002 when it granted Novopharm's Motion for Summary Judgment of Noninfringement. Judge Darrah decided the motion without hearing oral argument and without conducting a Markman hearing.

Abbott and Fournier have appealed Judge Darrah's grant of summary judgment, including his claim construction. That appeal is fully briefed before the United States Court of Appeals for the Federal Circuit. Oral argument is scheduled for January 6, 2003. (<u>Id.</u> at ¶ 9).

C.    THE DELAWARE ACTION INVOLVING TEVA'S
ANDA FOR TABLETS.

On September 5, 2001, Abbott received approval from FDA for its NDA

for fenofibrate tablets.  On August 21, 2002, Teva sent Abbott and Fournier a letter under

21 U.S.C. § 355(j)(2)(B)(i) stating Teva's reasons for contending that its proposed generic

version of fenofibrate tablets would not infringe three patents:  the '726 patent, the '670

patent, and the '405 patent.  After receipt of certain Teva confidential materials under a

confidential disclosure agreement, Fournier and Abbott timely commenced this action in

this Court on October 4, 2002 and served Teva's agent the business day after filing.  (Id.

at ¶ 11).

On November 15, 2002, Teva filed its answer and affirmative defenses.

The affirmative defenses included a claim of inequitable conduct in connection with the

prosecution of a re-examination of the '726 patent (a defense not asserted in the Chicago

Capsule Litigation), as well as defenses of invalidity of the '670 and '405 patents (also

obviously not raised in the Chicago Capsule Litigation because those patents were not in-

suit there).  Along with its answer, Teva filed counterclaims seeking a declaration of non-

infringement and invalidity.   In addition, Teva, joined by its ultimate parent, Teva

Pharmaceutical Industries, Limited ("Teva PIL"), filed five antitrust counterclaims under

federal and thirty-two state laws, claiming that Plaintiffs' assertion of infringement of two

of the three patents here in-suit constitutes sham litigation.  Antitrust counterclaims were

not brought in the Chicago Capsule Litigation.   Plaintiffs' time to respond to these

counterclaims has not yet passed.

ARGUMENT

Teva has not met its burden of establishing that the balance of interests weighs strongly in favor of transfer. <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995); <u>Continental Cas. Co. v. American Home Assurance Co.</u>, 61 F. Supp. 2d 128, 131 (D. Del. 1999); <u>Bergman v. Brainin</u>, 512 F. Supp. 972, 973 (D. Del. 1981). A transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. <u>C.R. Bard, Inc. v. Guidant Corp.</u>, 997 F. Supp. 556, 562 (D. Del. 1998). Neither the public factors nor the private factors weigh in favor of transferring this case to the Northern District of Illinois.

I.    NO JUDICIAL ECONOMY OR TRIAL EFFICIENCIES WOULD BE GAINED BY TRANSFER.

A primary theme of Teva's argument is that significant efficiencies would accrue were the Court to transfer this action to the Northern District of Illinois. Upon examination of the facts, these claimed efficiencies turn out to be illusory.

A.    Teva Wrongly Assumes That Transfer To Chicago Would Result In Assignment Of This Case To Judge Darrah.

Teva contends that judicial economy and efficiency "undeniably" would be served by transfer. This claim turns on an assumption -- that the case, if transferred, would be assigned to Judge Darrah. Teva's assumption is wrong. As the cases recognize, transfer for reasons of judicial economy is inappropriate if there is no assurance that the transferred case will come to be assigned to a specific judge. <u>See</u> <u>Clontech Labs., Inc. v. Life Tech., Inc.</u>, 98-750 (SLR), at 1-2 (D. Del. April 29, 1999) (holding no judicial economies would be gained were "there is no assurance of record

that the instant litigation will be assigned to the same judge" that is hearing the related case in the transferee court).[3]

The Local Rules of the Northern District of Illinois provide for random assignment of cases (Local Rule 40.1), except in specified rare circumstances, none of which is applicable here.[4] (Ex. 7, attached hereto.) Thus, were this case to be transferred to the Northern District (or had it been brought originally there), it would be assigned randomly to one of the 20 District Judges or 12 Senior Judges. Indeed, Abbott filed suit against Impax Laboratories in the Northern District of Illinois four months after it filed suit against Novopharm. Although both suits dealt with the same '726 patent, and similar accused products (fenofibrate capsules), the Impax case was assigned to Judge Gottschall and was never reassigned to Judge Darrah. (Ex. 6 at ¶ 11.)

Once randomly assigned, the Northern District Local Rules provide that a case may be reassigned to another judge in the Northern District. But reassignment of this case to Judge Darrah, if transferred, would be extremely unlikely. Northern District Local Rule 40.4 governs reassignment of related cases. (Ex. 7.) It mandates that a motion for reassignment may be made by a party to a case and "shall be filed with the judge before whom the lowest-numbered case of the claim related set is pending."

---

[3]    Unreported opinions are being filed in a separate compendium of unreported opinions.

[4]    The exceptions to the random assignment rule are: (1) habeas corpus cases, (2) refiling of previously dismissed cases; (3) cases previously remanded that are removed; (4) multiple I.R.S. summonses against the same taxpayer; (5) cases filed to enforce, modify or vacate a judgment, or (6) "tag-along" cases in MDL proceedings. Local Rule 40.3(b). In addition, Rule 40.3(a) states that disciplinary cases and "[s]uch other cases as the chief judge may direct" are automatically assigned to the Executive Committee. (Ex. 7.)

Northern District Local Rule 40.4(c).  Thus, the Rule requires the judge who has an earlier-filed, related case to hear the reassignment motion.  Here, the judge before whom Teva would be required to bring the motion to reassign would therefore be Judge Darrah. But Teva could not bring a reassignment motion before Judge Darrah because there is no case pending before him.  See Grube v. Lan Indus., 257 F.3d 723, 731 (7th Cir. 2001) ("It is also elementary that once notice of appeal is filed with the district court it is divested of jurisdiction over the case, and the appellate court assumes jurisdiction.").  Judge Darrah entered final judgment in the Novopharm capsule case and the appeal of that judgment is pending, fully briefed, before the Federal Circuit.  Judge Darrah no longer has any case before him.  The Northern District and Judge Darrah lost jurisdiction once the appeal was filed.  Thus, unless and until the Federal Circuit remands the Chicago Capsule Litigation, Teva could not even file a reassignment motion in the Northern District were this case to be transferred back.

This is no mere technical defect in a potential Teva reassignment motion. The idea of reassignment under Northern District Local Rule 40.4 is to allow for effective supervision for cases that are at approximately the same stage.  Thus Rule 40.4(b) provides for reassignment only if:  (1) both cases are pending in the Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to a point where designating a later-filed case as related would substantially delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding.  (Ex. 7.)

These criteria would not be met if this case were transferred to the Northern District of Illinois. The earlier filed case has progressed to judgment and therefore already progressed past the point where any efficiencies could occur, and the two cases are not susceptible of disposition in a single proceeding. See Invitrogen Corp. v. Incyte Genomics, Inc., 2002 U.S. Dist. LEXIS 8118 (D. Del. May 1, 2002) (ruling against transferring case from Delaware to Maryland where infringement case involving same patents was pending and Maryland case was proceeding very slowly). Moreover, even were Judge Darrah to be reversed, and jurisdiction returned to him from the Federal Circuit, there would still be no efficiencies from a transfer. The cases would not be susceptible of disposition in a single proceeding. There would be a remanded infringement case solely on the '726 patent against Novopharm on its ANDA for fenofibrate capsules,[5] on which discovery has been completed and which would be ready for trial, and then there would be the present case, involving (based on Teva's recent answer and counterclaims) a different ANDA, two different patents, a different defendant, a different accused product, inequitable conduct claims related to the '726 patent and five antitrust counterclaims. Either the Chicago Capsule trial would be substantially delayed while the new Teva case was prepared for trial (in which case, the third of Northern District Local Rule 40.4 requirements would fail) or the Novopharm capsule case would go to trial promptly while the new case proceeded through discovery (in which case, the fourth requirement under that Rule would fail).

---

[5]     There were no validity or inequitable conduct issues in the Chicago Capsule Litigation. (Ex. 6 at ¶ 8.)

Thus, the cornerstone of Teva's motion -- that transfer to the Northern District can be equated to transfer to Judge Darrah -- rests on nothing. The chances of Judge Darrah getting the present case are less than one in twenty. A less than 5% chance is no basis on which to deny Plaintiffs their valid forum choice.

> B.   The Parties' Accused Products And (Two of the Three) Asserted Patents In This Case Are Different From Those In The Previous Litigation.

Even if it were likely that Judge Darrah would be assigned this case if transferred, judicial economy would still not be served by transfer. Transfer is not warranted simply because another court is familiar with (some of) the general technology, especially where, as here, the patents, parties and accused products differ in the two cases. See Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc., 01-199 (SLR), at 9 (D. Del. Nov. 28, 2001) (holding that infringement case pending elsewhere dealing with the same technology did not warrant transfer, where that case dealt with different patents and parties); AlliedSignal Inc. v. Hoechst Celanese Corp., 97-508 (SLR), at 3 (D. Del. June 8, 1997) (same technology, different patents and accused products, and case settled before trial); EMC Corp. v. Storage Tech. Corp., 94-482 (JJF), at 5-6 (D. Del. June 16, 1995) (same technology, different product and different issues); Square D Co. v. Medar, Inc., 36 USPQ2d 1123, 1125 (D. Del. 1994) (holding that infringement case pending elsewhere dealing with the same technology did not warrant transfer, where that case dealt with a different accused product); Novartis Seeds, Inc. v. Pioneer Hi-Bred Int'l, Inc., 1997 WL 852110, at *4 (D. Minn. 1997) (same technology, different patents); Pall Corp. v. PTI Tech., Inc., 992 F. Supp. 196, 202 (E.D.N.Y. 1998) (holding that infringement case pending elsewhere dealing with the same technology did

not warrant transfer, where that case dealt with a different patent and a different accused product).

1.     The Parties.

Although in its brief Teva implies that it is the same party as Novopharm by referring to Novopharm as its "privy," the two companies are different parties. The Chicago Capsule Litigation was litigated against Novopharm. Novopharm is the only appellee party to the appeal. Novopharm's counsel, in its filings before the Federal Circuit, admits that Novopharm is the real party in interest in the appeal. (Ex. 8, attached hereto.) The party alignment in the present case is different. Novopharm is not a party and, from all facts now known to Plaintiffs, will have no relevance to the case. Teva USA is the only Defendant and the Counterclaim Plaintiffs are Teva USA and Teva PIL.[6] Thus, the parties in the two cases are different. Lucas Aerospace, Ltd. v. Unison Ind., 93-525 (JJF), at 3, 7 (D. Del. Dec. 30, 1994) (refusing to transfer case from Delaware to Northern District of Illinois where pending Illinois case involved the same patent and the parent corporation of the party in the Delaware case).

2.     Accused Products.

While Teva makes much of the fact that the accused products in the Chicago Capsule Litigation and the present case both contain fenofibrate, Teva cannot

---

[6]     While Teva PIL was named a party defendant in the Chicago Capsule Litigation, because it had recently acquired Novopharm and Plaintiffs were uncertain about the ownership of the Novopharm ANDA, no discovery was taken as to Teva PIL. Teva PIL was released from the Chicago Capsule Litigation by agreement, and was not named as a party defendant in the amended complaints in that case.

deny that the products are fundamentally different. Each is the subject of a separate ANDA before the FDA. The tablet has been approved for indications different than the capsule. (Exs. 1, 2.) The FDA required separate testing and data for each drug. Each would require a separate infringement analysis.

3. <u>Patents.</u>

Two of the three patents Plaintiffs asserted against Teva in the current suit were not asserted in the previous litigation, and deal with a technology significantly different from the technology at issue in the previous litigation. The '405 and '670 patents relate to a formulation that combines hydrosoluable carriers and other excipients to create a highly dissolvable fenofibrate drug. (Ex. 4,5.) This formulation technology was not at issue in the Chicago Capsule Litigation, and no matter where this action is adjudicated, a judge will have to learn fresh the technology described in the '405 and '670 patents. This Court is as able to learn this new technology as well as any other court in the country. See, e.g., Pall Corp., 992 F. Supp. at 202 ("It is the Court's function in every case to familiarize itself with the pertinent facts, data, technology and law. The Court should be capable of grasping the 'notoriously difficult' issues present in a patent case.").

Only the '726 patent is common to the Chicago Capsule Litigation and the current Delaware action. The existence of the '726 patent in both cases, however, provides no reason to transfer this case. None of Judge Darrah's work involving the '726 patent will be duplicated in the current case, whether the case proceeds in Delaware or in Illinois. If the Federal Circuit affirms Judge Darrah's claim constructions, (a) then there will be no further action in the Chicago Capsule Litigation, and (b) Plaintiffs will drop their claims on the '726 patent in this case. If Judge Darrah's claim constructions are not

affirmed, and instead he is reversed, then still Teva's claimed "efficiencies" will likely not occur because (as noted above in Section I.A.) the assignment rules of the Northern District of Illinois would probably not result in Judge Darrah getting any transferred case, and because this Court will be as capable of applying the Federal Circuit's new claim construction as Judge Darrah would be.

Unlike the Chicago Capsule Litigation, this case has issues relating to the validity of all three patents, unenforceability of the '726 patent, antitrust claims and state law unfair competition claims. Judge Darrah is no more familiar with these issues, and no more "equipped to resolve the issues raised by the plaintiffs with dispatch" as Teva asserts (Teva Br. 21), than any other judge in the country. See e.g., Datex-Ohmeda, Inc. v. Hill-Rom Serv., Inc., 185 F. Supp. 2d 407, 412 (D. Del. 2002) (denying transfer where an infringement suit and an interference suit both dealing with the same patent, but filed in different courts, were not sufficiently related).

> C.    The Antitrust Counterclaims In Delaware Raise Issues Unrelated To The Chicago Capsule Litigation.

Since the time that Teva filed its 1404(a) motion, this case has become even more different from the Chicago Capsule Litigation than it had been. Teva, along with its ultimate parent, Teva PIL, has chosen to file antitrust counterclaims claiming that Plaintiffs' assertion of two of the three patents-in-suit here constitutes sham litigation which will prolong this litigation and thereby potentially delay Teva's market entry. (Teva admits that it could not be on the market now with a generic tablet product regardless of Plaintiffs' suit, because it has not yet received even tentative approval from FDA. See, e.g., Counterclaim, ¶¶ 73, 105.

With one immaterial exception, those antitrust counterclaims represent issues wholly separate from the Chicago Capsule Litigation.[7]  If they are allowed to proceed, they will necessarily entail discovery and merits determination of issues such as market definition which are not remotely a part of the Chicago Capsule Litigation.

The new antitrust counterclaims, for purposes of the present motion, only serve to further differentiate the issues here from the issues in the Chicago Capsule Litigation and to provide a further reason for denying Teva's motion.

> D.    No Discovery Efficiencies Would Result If This
>        Case Were Transferred.

Teva claims that the Protective Order in the Chicago Capsule Litigation requires Judge Darrah's intervention before confidential documents can be used in the present case, and Teva argues that therefore Judge Darrah will of necessity be embroiled in issues relating to the use of Chicago Capsule Litigation discovery materials in the new case.  Assuming any reasonable degree of cooperation among the parties, this is wrong. The Protective Order clearly provides that producing parties may agree to the use of confidential materials outside the Chicago Capsule Litigation.  See Protective Order

---

[7]    The one point of overlap between the antitrust counterclaims and the Chicago Capsule Litigation is Teva's contention that collateral estoppel from Judge Darrah's claim construction bars the instant litigation.  This overlap does not merit transfer.  Judge Darrah's claim construction will either be affirmed by the Federal Circuit or reversed.  If it is affirmed, Plaintiffs will dismiss their '726 claims from the present suit.  If reversed, then there will be a new claim construction governing the '726 patent, which Judge Darrah would be no more capable of applying than would this Court.  And while, as Teva repeatedly states, Plaintiffs have not appealed one of Judge Darrah's claim constructions, this specific construction can be applied by this Court as easily as it can be applied by Judge Darrah.

¶ C.5. (Def. Ex. G.) Any potential disputes in this regard can be completely resolved by the Chicago Capsule Litigation's producing parties (all of which are represented by counsel of record in the present case) by stipulating that discovery materials from the Chicago Capsule Litigation may be used as if produced in the present case, subject to confidentiality under the present case's protective order. There is no reason for Judge Darrah to become involved in discovery issues in this case. Indeed, counsel for Plaintiffs have already offered Teva an agreement allowing use of Protective Order materials from the Chicago Capsule Litigation in the present case as if they had been produced in this case. (Ex. 9, attached hereto.)

Nor can Teva plausibly contend that Judge Darrah developed some familiarity with relevant facts by dealing with discovery disputes in the Chicago Capsule Litigation. The court only decided one discovery dispute in that case -- it denied Novopharm's motion to compel production of a 30(b)(6) witness on infringement contentions before expert discovery. (Ex. 6 at ¶ 7.) This motion did not remotely involve the merits of the technology and would not be the basis for any efficiencies in the new tablet case.

      E.     Teva's Claim That Trial Will Occur Faster In The Northern District Of Illinois Is Without Support.

Teva's last "public interest" argument is that transfer "would likely lead to a quicker resolution of this dispute." (Teva Br. at 22.) This is baseless.

First, it is premised (again) on the assumption that transfer would result in assignment of the case to Judge Darrah. As is discussed in section I.A., above, this assumption is erroneous.

Second, Teva's argument that "Judge Darrah demonstrated sensitivity to" Novopharm's desire to resolve the capsule case promptly by "leveraging his familiarity with fenofibrate technology into faster case dispositions" (id.) is specious. The different consolidated capsule cases required no additional work from Judge Darrah. There were three separate cases only because Novopharm made three separate Paragraph IV certifications on different capsule dosages. There was no "leveraging" involved. As Judge Darrah's summary judgment decision clearly shows, there was not one iota of difference as to the different capsule dosage sizes in his infringement analysis under either literal infringement (Def. Ex. E at 14) or doctrine of equivalents (Def. Ex. E at 14-15). Indeed, his summary judgment decision, the only occasion Judge Darrah has had to address the merits of the case, makes no mention at all of the different capsule dosage sizes.

Third, the published data on time to trial, which Teva ignores, show that average time to trial in this Court is indeed faster than it is in the Northern District of Illinois (21 months for Delaware versus 26.3 months in the Northern District). (Ex. 10, attached hereto.) Indeed the schedule to which all parties agreed to in the Chicago Capsule Litigation provided for trial 25 months after commencement of that litigation. (Ex. 6 at ¶ 6.) Teva's argument that disposition of this case will be faster in Chicago is without merit.

II.    THE ALLEGED CONVENIENCE TO THE PARTIES DOES NOT SUPPORT TRANSFER.

Teva's arguments about convenience of the parties are neither legally nor factually sufficient to disturb Plaintiffs' valid choice of forum. The effect of modern technology in the fields of transportation and data transference has been to minimize the

significance of the "convenience factors" in the §1404(a) analysis. <u>Cypress Semiconductor</u>, 2001 WL 1617186, at *3 ("Convenience of the parties is a somewhat archaic notion in the world today."); <u>Square D Co.</u>, 36 USPQ2d at 1125 (refusing to transfer case out of Delaware where there was no dispute that convenience factors favored transferee court). Especially given the size and location of the parties, the convenience factors do not weigh in Teva's favor.

> A.    The Parties Are Multi-National Corporations Who
>        <u>Will Not Be Inconvenienced In Delaware.</u>

Like Abbott, Teva is a large company. To quote its web site: "Teva is the largest generic drug company in the world and ranks 31 among all pharmaceutical companies." (Ex. 11, attached hereto.) Also, Teva USA is the biggest pharmaceutical manufacturer in the United States, based on new retail prescription volume. (<u>Id.</u>) Given Teva's size, it is hard-pressed to argue hardship over litigating a case in Delaware. <u>See, e.g.</u>, <u>Datex-Ohmeda, Inc.</u>, 185 F. Supp. 2d at 412 ("[B]ecause the parties to this litigation are national corporations, the Court finds that neither party will be unduly inconvenienced by this action proceeding in Delaware."); <u>Cypress Semiconductor</u>, 2001 WL 1617186, at *3 ("[B]oth plaintiff and defendant are corporations that operate on a national or worldwide scale. In view of this status, convenience based on [cost of travel and document transport] is uncompelling . . .").

> B.    Costs of Travel, Document Shipping and Local
>        <u>Counsel Are Insignificant.</u>

While costs of travel, document shipment and local counsel are relevant, these are minor costs of litigation, especially to large multi-national corporations. As this Court has previously pointed out:

> [I]n patent infringement cases, the relative cost of litigation in one jurisdiction versus others probably depends on a number of factors, including whether the court has implemented what we call a "rocket docket;" whether it has special local rules for patent infringement cases; whether the court has an established procedure for exploring settlement; and whether the court has a relatively well developed and predictable body of case law on how the cases are tried, including case law on matters such as bifurcation, scope of the waiver of the attorney client privilege on the assertion of a good faith reliance on the advice of counsel, and even on when it is appropriate to transfer a case to another venue.

Ade Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 572 (D. Del. 2001).

Teva does not, and cannot, argue that the Northern District of Illinois can handle patent cases more efficiently than can this Court. An increase in the length of time to trial increases the costs of litigation more than travel costs. As is noted above, average time to trial is more than five months shorter here than it is in the Northern District of Illinois. (Ex. 10.) The cost of shipping documents and hiring local counsel is similarly inconsequential. Ade, 138 F. Supp. 2d at 571-72 (holding that "[w]ith new technologies for storing and gathering information, the burden of gathering and transmitting documents 3,000 miles is probably not significant more than it is to transport them 30 miles" and that cost of retaining local counsel should not be significant factor in deciding transfer motion); Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 125 (D. Del. 1993) at 218 ("[T]echnological advances have substantially reduced the burden of having to litigate in a distant forum. . . . The lawyers in this case know that within a matter of minutes they can prepare a paper in California, serve it on counsel in New York, file it with the Clerk in Delaware, and deliver it to the Court for a telephone conference call linking lawyers in three or four different cities.").

Even if travel expenses were a significant factor, they do not tip the scales in Teva's direction. Non-Delaware counsel for the parties are from Washington, D.C. (Fournier), Chicago (Abbott) and New York and Chicago (Teva). Three firms are on the East Coast and two in Chicago. Lawyer travel will be required wherever the case is pending. While Teva and Abbott have Chicago counsel, Fournier has counsel from Washington, D.C., whose travel burden would be far diminished by litigating the present dispute in Delaware. The travel burden of the lawyers in this case simply does not weigh in favor of transferring the case.

## C.    Witnesses Would Not Be Inconvenienced.

The convenience to the witnesses is only relevant to the extent that a witness may actually be unavailable in one of the fora. Jumara v. State Farm Insurance Co., 55 F.3d 873, 879 (3d Cir. 1995). Teva has not contended that any of its witnesses will be unavailable in Delaware, so this factor is irrelevant. See Datex-Ohmeda, 185 F. Supp. 2d at 412 (convenience of witnesses was not a significant factor in transfer motion where neither party contended that any witness was beyond the jurisdiction of the court), Cypress Semiconductor, 2001 WL 1617186, at *4 (ignoring movants "convenience to witness" argument because movant identified no obstacle to obtaining personal jurisdiction over third-party witnesses, even though movant's employees, officers and experts would have to travel to Delaware).

Even were convenience of the witnesses relevant to the inquiry, litigation in Chicago would be no more convenient than litigation in Delaware. In discussing the proximity of witnesses and documents, Teva ignores everything other than the fact that Abbott witnesses are in Northern Illinois. In fact, Abbott witnesses are only slightly

closer to the federal courthouse in Chicago than Teva witnesses are to this courthouse (40 miles v. 49 miles). (Ex. 12.) Teva's statement that it would have to "move [its] witnesses" over 1500 miles roundtrip to appear before this Court (Teva Br. at 24) is, therefore, inexplicable. In fact, examination of the location of what appear to be likely possible witnesses shows that they are spread all over the country and the world:

| Potential Witness | Location |
|---|---|
| Fournier Witnesses | Dijon, France (see Ex. 13, attached hereto.) |
| Fournier U.S. Witnesses | Parsippany, NJ (see Ex. 13.) |
| Abbott Witnesses | Abbott Park, IL (see Ex. 6, ¶ 2.) |
| Teva U.S. Witnesses | Headquarters in North Wales, PA<br><br>Final Dosage Form Manufacturing Facilities in Sellersville, PA, Elmwood Park and Fairfield, NJ<br><br>(see Ex. 11, attached hereto.) |
| Teva PIL Witnesses | Tel Aviv, Israel (see Ex. 11.) |
| '726 Patent Inventors | Dijon France (see Ex. 3.) |
| '670 and '405 Inventors | Strasbourg, France (André Stamm) (see Ex. 4, 5.)<br><br>Irvine, CA (Pawan Seth) (see id.) |
| '726, '670 and '405 Prosecuting Attorneys | Washington, DC (see Ex. 3, 4, 5.) |

The only potential witnesses that are located even remotely near the Chicago courthouse are those from Abbott. Further, because Abbott neither provided the inventors on the patents-in-suit nor manufactures the marketed products, Abbott, among all the parties to this case, is the least likely to have witnesses with information relevant to this suit.

Moreover, Abbott's convenience can hardly be of concern on this motion, given Plaintiffs' selection of the Delaware forum.

> D.   A   Delaware   Corporation   Will   Not   Be Inconvenienced By Having to Litigate In Delaware.

Especially given Teva's close proximity to this Court, as a Delaware corporation, it is hard-pressed to summon credible arguments that it is inconvenienced by litigating in Delaware.  A party cannot avail itself of the favorable incorporation laws of Delaware and then complain when it is sued in that state's courts.  Ade, 138 F. Supp. 2d at 572 ("A defendant's status as a Delaware corporation is a relevant factor to be considered in determining whether to grant a motion for a change of venue and has been since Congress adopted the change of venue statute in 1948."); Critikon, Inc. v. Becton Dickson Vascular Access, Inc., 821 F. Supp. 962, 965 (D. Del. 1993); Wesley-Jessen, 157 F.R.D. at 218 ("Absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient.").  Indeed, Teva is used to litigating in Delaware, having been involved in other pharmaceutical patent litigation here.  See e.g., Merck v. Teva, C.A. No. 00-035-JJF (D. Del. November 4, 2002); Novo-Nordisk v. Bio Technology General Corp. and Teva, 207 F.Supp. 2d 322 (D. Del. 2002). Teva has provided no compelling reason why this case should be transferred out of its state of incorporation.

> III.   PLAINTIFFS' CHOICE OF FORUM SHOULD BE GIVEN PARAMOUNT CONSIDERATION.

Plaintiffs' choice of forum is a paramount consideration whether or not that choice is their "home" forum.  Intel Corp. v. Broadcom Corp., 167 F. Supp. 2d 692, 706 (D. Del. 2001) (fact that plaintiff filed suit outside its home turf did not justify

transfer where plaintiff sued in defendant's state of incorporation); In re ML-Lee Acquisition, 816 F. Supp. 973, 976 (D. Del. 1993) (stating that even if plaintiff brings suit outside its "home turf," the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer"). Teva has fallen far short of demonstrating that the interests of justice weigh strongly in favor of transfer.

CONCLUSION

For the reasons set forth above, Plaintiffs' proper choice of forum should

be respected, and this case should proceed forward in this Court.

MORRIS, NICHOLS, ARSHT & TUNNELL

_Mary B. Graham_

OF COUNSEL:

James A. White
John A. Marlott
Timothy J. Heverin
Matthew D. Kellam
JONES DAY REAVIS & POGUE
77 West Wacker
Chicago, IL 60601
(312) 782-3939

Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
    ATTORNEYS FOR PLAINTIFF
    ABBOTT LABORATORIES

RICHARDS, LAYTON & FINGER

OF COUNSEL:

Charles D. Ossola
Timothy C. Bickham
Scott A.M. Chambers
ARNOLD & PORTER
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, DC 20004-1202
(202) 942-5000

Mark R. Shanks
SHANKS & HERBERT
TransPotomac Plaza
1033 N. Fairfax St., Suite 306
Alexandria, VA 22314
(703) 683-3600

November 25, 2002

321591

Frederck L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
One Rodney Square
Wilmington, DE 19899
(302) 651-7700
    ATTORNEYS FOR PLAINTIFFS
    FOURNIER INDUSTRIE ET SANTÉ AND
    LABORATOIRES FOURNIER S.A.