# EXHIBIT 19

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Clearclad Coatings, Inc. v. Xontal Ltd.
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
CLEARCLAD COATINGS, INC., an Illinois
corporation, f/k/a Hawking International, Inc.,
Plaintiff,
v.
XONTAL LTD., a Maryland corporation, Ralph
Coxon, Tim Coxon, Hawking International, LLC, a
Maryland limited liability corporation, Hawking
International, LTD., a United Kingdom Corporation,
Leonard Geoffrey Hawkes, and Peter Charles Ryder,
Defendants.
**No. 98 C 7199.**

Aug. 20, 1999.

*MEMORANDUM OPINION AND ORDER*

PALLMEYER, J.
**\*1** 1) [] Filed motion of [use listing in "Motion" box
above.]
2) [] Brief in support of motion due _____.
3) [] Answer brief to motion due _____. Reply to
answer brief due _____.
4) [] Ruling/Hearing on _____ set for _____ at
_____.
5) [] Status hearing[held/continued to] [set for/re-set
for] on _____ set for _____ at _____.
6) [] Pretrial conference[held/continued to] [set
for/re-set for] on _____ set for _____ at
_____.
7) [] Trial[set for/re-set for] on _____ at _____.
8) [] [Bench/Jury trial] [Hearing] held/continued to
_____ at _____.
9) [] This case is dismissed [with/without] prejudice
and without costs [by/agreement/pursuant to] []
FRCP4(m) [] General Rule 21 [] FRCP41(a)(1) []]]]]]
FRCP41(a)(2).
10) [] [Other docket entry] For reasons discussed in
the attached opinion, the court denies the motions to
dismiss for lack of personal jurisdiction as to all
Defendants; denies the motions to transfer venue as
to all Defendants; denies the motion to dismiss Count
II as to all Defendants; grants the motion to dismiss
Count III as to all Defendants; and grants the motion

to dismiss Count IV as to the English Defendants and
denies it as to the other Defendants.
11) [] [For further detail see order on the reverse side
of the original minute order.] order attached to the
original minute

No notices required, advised in open court.

ORDER

Defendant Xontal Ltd.'s motions to transfer and to
dismiss Counts II and IV for failure to state a claim
for relief are denied; its motion to dismiss Count III
is granted (Doc. # 17-1, -2). Defendants Hawking
International, LLC and Timothy Coxon's motions to
dismiss for lack of personal jurisdiction, to transfer,
and to dismiss Counts II and IV for failure to state a
claim are denied; their motion to dismiss Count III is
granted (Doc. # 8-1, -2, -3). Defendant Ralph
Coxon's motion to dismiss for lack of personal
jurisdiction, to transfer, and to dismiss Counts II and
IV for failure to state a claim are denied; his motion
to dismiss Count III is granted (Doc. # 20-1, -2.-3).
Defendant Ryder, Hawking, and Hawking
International, Ltd.'s motion to dismiss for lack of
personal jurisdiction is denied; their motion to
dismiss Count IV is granted; Count III is also
dismissed as to these Defendants (Doc. # 23-1, 25-1).

Plaintiff, Clearclad Coatings, Inc., an Illinois-based
distributor of industrial coatings, claims that several
of its former suppliers are now competing unfairly.
On November 10, 1998, Plaintiff Clearclad f/k/a
Hawking International, Inc. filed this lawsuit against
the following Defendants: Xontal Ltd.; Ralph Coxon,
Xontal's president; Hawking International, LLC
("Hawking LLC"); Tim Coxon, Ralph Coxon's son, a
former officer of Xontal, and now Hawking LLC's
president; Hawking International, Ltd. ("Hawking
Ltd."); and Leonard Geoffrey Hawkes and Peter
Charles Ryder, two officers of Hawking Ltd. In its
six-count Complaint, Plaintiff alleges violations of
the Lanham Act, 15 U.S.C. § 1125 (Count I), a
breach of contractual covenant not to compete (Count
II), breach of fiduciary duties (Count III), fraud
(Count IV), conspiracy (Count V), and violation of
the Illinois Trade Secrets Act, 754 ILCS 10651
(Count VI). The six counts are brought against all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

seven Defendants.

**\*2** Defendants move to dismiss or transfer the claims against them. Four related motions are before the court: (1) Defendant Xontal's motion to transfer the case to the District of Maryland or to dismiss Counts II, III, and IV for failure to state a claim; (2) Defendant Ralph Coxon's motion to dismiss for lack of personal jurisdiction, to transfer, or to dismiss Counts II, III, and IV for failure to state a claim; (3) Defendants Timothy Coxon and Hawking International, LLC's motion to dismiss for lack of personal jurisdiction, to transfer, or to dismiss Counts II, III, and IV for failure to state a claim; and (4) Defendants Hawking International, Ltd., Leonard Geoffrey Hawkes, and Peter Charles Ryder's motion to dismiss for lack of personal jurisdiction or to dismiss Count IV. For the reasons discussed below, the court denies the motions to transfer as to all Defendants; denies the motions to dismiss for lack of personal jurisdiction as to all Defendants; denies in part and grants in part the motions to dismiss Counts II, III, and IV from Plaintiff's case.

### FACTUAL BACKGROUND

The parties dispute each other's version of the facts. At this juncture of the case, however, the court accepts all well-pleaded allegations as true except that with respect to the transfer motion, the court is free to consider unrebutted allegations set forth in Defendants' affidavits. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). Any conflicts in the affidavits are resolved in favor of Plaintiff. *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988).

The parties have not made the court's job easy-besides the multiple motions and the numerous claims, the involved parties have adopted company names similar to the point of confusion, as will be seen in a moment. In addition, the companies' relationships are clearly interrelated, but the parties vigorously dispute the extent of that enmeshed web. The jumbled facts are further distorted by the constant cross-referencing within the parties' briefs to additional arguments and facts laid out in the other motions and briefs. With those difficulties in mind, the court attempts to detail the facts relevant to the motions at hand.

I. The Relevant Parties

A. Plaintiff Clearclad Coatings, Inc. f/k/a Hawking International, Inc.

Plaintiff Clearclad Coatings, Inc. ("Clearclad"), formerly known as Hawking International, Inc. ("Hawking Inc."), is an Illinois corporation with its principal place of business in Harvey, Illinois. (Compl.¶ 1.) Plaintiff is in the business of manufacturing, importing, distributing, and selling industrial coatings throughout North America. (*Id.*) In the early 1990s, Hawking Inc. distributed urethane products called "Clearclad" and manufactured in England by LVH Coatings, Inc. ("LVH"). (R. Coxon Aff., Ex. A to Defendant Ralph Coxon's Motion to Dismiss for Lack of Personal Jurisdiction, to Transfer, or to Dismiss Count II, III and IV for Failure to State a Claim Upon which Relief can be Granted (hereinafter "R. Coxon's Motion") ¶ 4; L. Hawkes Aff., Ex. 1 to Memorandum of Defendants Hawking International, Ltd., Leonard Geoffrey Hawkes and Peter Ryder in Support of Motion to Dismiss for Lack of Personal Jurisdiction ¶ 4.) Hawking Inc. obtained Clearclad products from Hawking International Ltd. ("Hawking Ltd."), a British company, which in turn obtained the products from LVH. (R. Coxon Aff. ¶ 4.) Although the precise parameters of their relationship are not known, the two companies were related in that Hawking Ltd. owned shares in Hawking Inc. (L. Hawkes Aff. ¶ 5.) On or about December 31, 1996, Hawking Inc. merged with Clearclad [FN1] to form what is now known as Clearclad Coatings, Inc. (Compl.¶ 2.)

> FN1. The record does not indicate the nature of the original "Clearclad" entity or the nature of its business prior to the merger with Hawking Inc.

B. Defendant Xontal, Ltd.

**\*3** Defendant Xontal, Ltd. ("Xontal") is a Maryland corporation with its principal place of business in White Hall, Maryland. (*Id.* ¶ 3.) Xontal is involved in the business of selling and distributing chemicals, including, at one point, some of Plaintiff's products. (*Id.*) In a contract executed on July 22, 1993, Xontal agreed to serve as Hawking Inc.'s east coast exclusive distributor. (R. Coxon Aff. ¶ 5.) Xontal's distribution territory covered Massachusetts, Connecticut, Rhode Island, New York, Pennsylvania, Maryland,

Delaware, Virginia, North Carolina, South Carolina, Georgia, Alabama, Tennessee, Florida, Mississippi, West Virginia, and Vermont. (Compl.¶ 3.) Notably, Illinois was not part of the territories to be served by Xontal, and Xontal has never made sales of Plaintiff's urethane product in Illinois. (R. Coxon Aff. ¶ 5.)

According to Plaintiff, the terms of the exclusive distribution agreement between Xontal and Plaintiff ("Distribution Agreement"), as well as the custom and practices of the parties, imposed fiduciary duties on Xontal, its officers, employees, and agents "of the utmost loyalty, honesty, good faith and fair dealings."(Compl.¶ 18.) Notably, nothing in the Distribution Agreement explicitly makes Xontal a fiduciary of Hawking Inc. Several additional provisions of the Distribution Agreement are worth noting. First is a non-compete clause, stating:
Not during the continuance of this Agreement [shall Xontal] be concerned or interested either directly or indirectly in the manufacture or supply of goods in the Territories which are substantially similar to or are competitive with the Products nor for a period of one year after the termination of this Agreement to distribute or deal in the Territories with any products substantially similar to or competitive with the products upon suitable compensation by Principal.

(Distribution Agreement, Ex. A to Compl. ¶ 5.2.) The agreement also includes the following clause:The distributor [Xontal] shall not without the express written consent of the Principal use any Confidential Information other than for the promotion and sales of the Products or disclose any Confidential Information to any third party.

(*Id.* ¶ 7.1.)Finally, the agreement includes what Plaintiff calls a forum selection clause:This Agreement shall be governed by the laws of the State of Illinois in every particular and the parties submit to the non-exclusive jurisdiction of the State of Illinois courts.

(*Id.* ¶ 12.)

The Distribution Agreement between Xontal and Clearclad covered a five-year term, ending July 22, 1998. (R. Coxon Aff. ¶ 7.) According to Ralph Coxon, president of Xontal, in 1997, Clearclad proposed a new agreement in which Xontal would receive only a non-exclusive distributorship. (*Id.*)

This, he describes, was completely unacceptable, and he ultimately terminated their working relationship.[FN2](*Id.*) Clearclad "directly disputes" Ralph Coxon's version of what occurred. (Response to Defendants Timothy Coxon and Hawking International, LLC's Motion to Dismiss or Transfer or, Alternatively, to Dismiss Counts II, III and IV for Failure to State a Claim Upon Which Relief can be Granted ("Pl. Response to R. Coxon's Motion"), at 6.) Edward Kittridge, President of Clearclad, instead contends that Coxon did not say that he would "*absolutely* not extend a Distribution Agreement on a non-exclusive basis." (Kittridge Aff., Ex. 1 to Pl. Response to R. Coxon's ¶ 38 [FN3] (emphasis in original).) Apparently in an effort to support that assertion, Kittridge notes that he was engaged in intensive negotiations with Coxon through July 22 1998, at which point Coxon concluded that he would not extend the Distribution Agreement.[FN4](*Id.*)

> FN2. The record does not disclose whether Plaintiff itself distributed the urethane products on the east coast following the end of its relationship with Xontal.

> FN3. The court observes that Clearclad's citations to paragraphs in Kittridge's affidavit differ from the actual numbering of paragraphs in the affidavit itself. This is consistent throughout, raising a question of whether Clearclad was working from a different version of the affidavit than the one before the court.

> FN4. The basis of Clearclad's objection to Coxon's description of events is not entirely clear to the court. Certainly, Coxon could have told Kittridge in 1997 that he would absolutely not accept a non-exclusive Distribution Agreement, but continued negotiations in the hopes that another agreement would result. And if Clearclad's dispute has to do only with the use of the word "absolutely" (i.e., whether Coxon's position was subject to compromise), the court finds little merit to Clearclad's objection.

C. Defendant Ralph Coxon

**\*4** Defendant Ralph Coxon is a resident of Maryland,

a permanent resident alien of the United States, and a citizen of the United Kingdom. (Compl.¶ 5.) Plaintiff alleges that Ralph Coxon possesses a financial ownership interest in Defendant Hawking International, LLC ("Hawking LLC"), a Maryland domestic limited liability company that was formed on June 12, 1998. (*Id.* ¶¶ 4-5.)The use of the name "Hawking International" by Hawking LLC was apparently authorized by Ralph Coxon (Compl.¶ 7), from which Plaintiff infers that "surely ... some financial relationship [exists] between Ralph Coxon, Hawking Ltd., LLC, and Timothy Coxon."(Pl. Response to R. Coxon's Motion, at 5.) Ralph Coxon, however, claims that Xontal has no financial interest in Hawking LLC. (R. Coxon Aff. ¶ 9.)

D. Defendant Hawking International, LLC

Defendant Hawking LLC, like Plaintiff, sells urethane products in the eastern and southeastern United States. (T. Coxon Aff., Ex. 1 to Memorandum in Support of Motion to Dismiss or Transfer or, Alternatively, to Dismiss Counts II, III and IV for Failure to State a Claim Upon Which Relief can be Granted (hereinafter "T. Coxon Motion") ¶ 2.) Hawking LLC has its principal place of business in White Hall, Maryland, at the same street address as Xontal. (Compl. ¶ 4.) Consistent with the company and family name common to this case, Hawking LLC is owned solely by Timothy Coxon, who is the son of Ralph Coxon. (T. Coxon Aff. ¶¶ 2, 5.)

E. Defendant Timothy Coxon

Defendant Timothy Coxon is a resident of Georgia since approximately 1993 and a permanent resident alien of the United States and citizen of the United Kingdom. (Compl. ¶ 6; T. Coxon Aff. ¶ 3.) From approximately 1992 to May 1998, he worked as a salesman for Xontal, primarily on the sale of products distributed by Clearclad.[FN5](T. Coxon Aff. ¶ 4.) When Timothy Coxon learned from his father that Xontal's Distribution Agreement with Clearclad was not going to be renewed, he realized that there would be no work for him at Xontal, and on May 14, 1998, he resigned from Xontal and pursued plans to start his own company. (*Id.* ¶¶ 5, 7.) As discussed below, Timothy Coxon eventually became a distributor for a urethane product produced by Hawking Ltd. (*Id.* ¶ 8.)

FN5. Plaintiff asserts that he was not a

salesman, but Vice-President and an officer at Xontal, but does not offer any substantiating documentation or explain the significance of the purported distinction. To the extent that the different positions are relevant in discussing the fiduciary shield issue, the court discusses that below. *See infra* Part II.C.1.b.

F. Defendant Hawking International, Ltd.

Defendant Hawking International, Ltd. ("Hawking Ltd.") is a corporation formed under the laws of the United Kingdom with its principal place of business in Gloucestershire, England. (Compl.¶ 8.) Hawking Ltd. is involved in the manufacture, import, export, distribution, and sale of chemical products internationally. (*Id.*) In April 1987, Hawking Ltd. was appointed by LVH to be a distributor of LVH's urethane products in Asia, Australia, Ireland, and the Middle East. (L. Hawkes Aff. ¶ 4.) The Distribution Agreement was extended to cover Canada and the United States in or about 1991. (*Id.*)

As described above, in 1992, Hawking Ltd. entered into a Distribution Agreement with Plaintiff to distribute the LVH urethane products in the United States. (*Id.* ¶ 5.) At the time, Hawking Ltd. owned an undisclosed number of shares in Hawking Inc. (*Id.*)On or about April 25, 1994, LVH ended its relationship with Hawking Ltd. and negotiated the Distribution Agreement for Clearclad urethane products with Hawking Inc. directly. (*Id.* ¶ 6.) Since approximately March 1994, Hawking Ltd. has not sold any products to Hawking Inc. or its successor, Clearclad. (*Id.*) In January 1995, as part of a settlement with Hawking Inc. (the nature of the dispute being settled is not explained) Hawking Ltd. sold all of its interest in Hawking Inc., presumably to Hawking Inc. (*Id.*)

**\*5** On February 15, 1995, Hawking Ltd. and Hawking Inc. entered into an agreement to "sell, assign, convey and transfer a perpetual license to Hawking International, Inc. to use all existing trade names, trade marks and assumed names of Hawking International, Ltd. held, used or asserted, and relating directly or indirectly to products now being marketed by Hawking International Inc." (Compl. ¶¶ 11-12; *see* Settlement Agreement, Ex. A to Compl.) Defendants Hawkes and Ryder, officers of Hawking Ltd., were

Case 1:08-cv-01243    Document 22-20    Filed 03/31/2008    Page 6 of 23

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

also parties to that agreement. (*See* Compl. ¶ 12; Settlement Agreement.) The three Defendants were paid $58,560 for the license. (*Id.*) Illinois law applies in construing the agreement. (Compl. ¶ 13; Settlement Agreement.)

In May 1998, Timothy Coxon contacted Hawking Ltd. about the possibility of Coxon distributing a new urethane product for Hawking Ltd. in the United States. (T. Coxon Aff. ¶ 8.) The agreement was finalized in June 1998 for Coxon's new company, Hawking LLC, to become a distributor of Hawking Ltd.'s new product, known as Techniclad, in the United States. (L. Hawkes Aff. ¶ 7.)

G. Defendants Hawkes and Ryder

As the name may imply, Defendant Leonard Geoffrey Hawkes has been affiliated with at least two of the "Hawking" companies. He is the Managing Director and Chairman of the Board of Hawking Ltd. (L. Hawkes Aff. ¶ 3.) He is a resident and citizen of the United Kingdom. (*Id.* ¶ 2; Compl. ¶ 9.) During the period of Hawking Inc. and Hawking Ltd.'s association, Hawkes served as a director of Hawking Inc. (L. Hawkes Aff. ¶ 5.) On or about April 25, 1994, however, Edward Kittridge, President of Hawking Inc., called for a special meeting of the shareholders of Hawking Inc. for the purpose of removing Hawkes as a director, and the Board voted him out. (*Id* .) The record does not reveal Kittridge's motivation for removing Hawkes.

Defendant Peter Charles Ryder, also a citizen and resident of the United Kingdom, is the Technical Director and Deputy Chairman of the Board of Directors of Hawking Ltd. (P. Ryder Aff., Ex. 2 to Memorandum of Defendants Hawking International, Ltd., Leonard Geoffrey Hawkes and Peter Ryder in Support of Motion to Dismiss for Lack of Personal Jurisdiction ¶¶ 2-3.) Like Hawkes, Ryder was removed as a director at the specially-summoned April 25, 1994 shareholders' meeting. (L. Hawkes Aff. ¶ 5.)

II. The Allegations

The claims, like the parties, are numerous and closely interlinked. At bottom, Plaintiff alleges that during the existence of the Distribution Agreement between Clearclad and Xontal, Defendants Xontal, Ralph and

Timothy Coxon, Hawking LLC, Hawking Ltd ., Hawkes, and Ryder were actually secretly competing with Clearclad and diverting sales inquiries and sales to themselves. (Pl. Response to R. Coxon's Motion, at 2.) Plaintiff charges that Defendants Xontal, Hawking LLC, and Ralph and Tim Coxon have manufactured and distributed goods substantially similar to and competitive with those distributed by Plaintiff Clearclad and have disclosed trade secrets in violation of the non-compete clause in the Distribution Agreement. (Compl. ¶¶ 22; 52.) Plaintiff further alleges that Defendants Hawking Ltd., Hawkes, and Ryder have assisted, aided, abetted, and conspired with the other Defendants to manufacture and distribute such products. (*Id.* ¶ 23.)Finally, Plaintiff claims that all Defendants have wrongfully claimed ownership of the name "Hawking International" in violation of Plaintiff's settlement February 1995 agreement with Hawking Ltd. (*Id.* ¶¶ 29-30.)

**\*6** Plaintiff takes issue with nearly all of the facts presented in support of Defendants' motions. For example, Ralph Coxon maintains that since the Distribution Agreement expired on July 22, 1998, Xontal has not sold or distributed any urethane coating products. (R. Coxon Aff. ¶ 10.) Clearclad disputes that statement and goes so far as to call it "such a distorted rendition of facts as to almost amount to a misrepresentation."(Pl. Response to R. Coxon's Motion, at 3.) Kittridge proffers a sales brochure, indicating that Xontal and Ralph Coxon would be selling Techniclad products (a urethane coating product) at a June 1999 SUR/FIN [FN6] trade show. (Kittridge Aff. ¶ 45; *see* SUR/FIN Brochure, Ex. C to Pl. Response to R. Coxon's Motion.) The brochure reads: "Exhibit: Xontal will feature E-coat materials by Hawking International LLC; Fannon Products' infrared lamps and ovens; and Pro Quip automatic plating machines."(SUR/FIN Brochure.) Based on this, Clearclad concludes that Xontal's assertion that it and Hawking LLC are not selling competitive products is a "gross misrepresentation." (Pl. Response to R. Coxon's Motion, at 3.)

FN6. The parties do not explain the acronym.

Instead, Plaintiff alleges that since early 1998, Defendants have on numerous occasions secretly competed with Clearclad and diverted sales inquiries

Not Reported in F.Supp.2d                                                                       Page 6
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

and sales to themselves. In April 1998, Plaintiff claims that Hawkes and Timothy Coxon "called on a Clearclad customer" (not identified by name) and attempted to sell the customer products competitive with Clearclad products. (Kittridge Aff. ¶ 19.) At the SUR/FIN trade show in June 1998, Alfred M. Gabriele, [FN7] one of Xontal's salesmen, allegedly diverted inquiries of Kwikset Lock Company ("Kwikset"), a potential Clearclad customer, and offered competing products by Hawking LLC and Hawking Ltd. (Compl. ¶¶ 36-37; *id.* ¶ 20.)Jack Lofstrom, Vice-President of Sales at Clearclad, was present at the trade show and has submitted an affidavit stating that under the Distribution Agreement, Xontal was expected to offer and attempt to sell Clearclad products at the show. (Lofstrom Aff., Ex E to Pl. Response to R. Coxon's Motion ¶ 3.) Lofstrom also states that he observed Gabriele talking with Kwikset at the show. (*Id.* ¶ 5.) Gabriele later sent Kwikset a letter on behalf of Hawking LLC, confirming an association between Hawking Ltd. and Hawking LLC, and offering to sell Techniclad products to Kwikset. (Compl. ¶ 38; *see* Gabriele Letter, Ex A to Kittridge Aff.)

> FN7. Gabriele was a salesman at Xontal who serviced Clearclad customer accounts. (Compl.¶ 35.) He resigned from Xontal effective June 25, 1998 and is now working for Hawking LLC. (*Id.*)Gabriele is not a defendant in this lawsuit.

On August 12, 1998, Clariant Corp. ("Clariant"), another potential Clearclad customer that had made significant steps toward signing a contract with Clearclad, decided instead to do business with Xontal, which was putting in a "trial system" (the term is not explained) costing less than Clearclad's system. (*Id.* ¶ 48; Kittridge Aff. ¶ 29.) Clearclad alleges that Xontal had provided Clariant with false information and that Defendants sold Clariant a competing product based on trade secrets and confidential information taken from Plaintiff.[FN8](*Id.*)

> FN8. Although Clariant's ultimate decision came after the end of the Distribution Agreement, Plaintiff claims that negotiations between Xontal and Clariant began in March of 1998, while the Distribution Agreement was still in effect. (*See* Kittridge Aff. ¶ 28.)

\*7 According to Plaintiff, Defendants have also managed to steal away existing Clearclad customers by relying on confidential information and making misrepresentations. On October 5, 1998, Wilshire Lighting, a Clearclad customer serviced by Xontal and Gabriele, informed Clearclad that it had chosen Hawking LLC to supply chemical coatings for its products. (Compl. ¶ 40; Kittridge Aff. ¶ 22.) The diversion of the sale, Plaintiff charges, was the result of illegal use of confidential information and trade secrets and misrepresentations about Hawking LLC's products being the same as those by Clearclad (apparently, Plaintiff contends they are not).(*Id.*) On October 7, 1998, Hager and Sons Hinge and Manufacturing Company, Inc. ("Hager"), another customer of Clearclad serviced by Xontal, switched to Hawking LLC for its coating products, allegedly based on the same misconduct by Defendants. (Compl. ¶ 41; Kittridge Aff. ¶ 23.)

Plaintiff also alleges that Defendants wrongfully used one of Clearclad's trade names/trademarks (grouped together by Plaintiff). Specifically, Clearclad claims that "Hawking International" was one of the trade names and trademarks licensed to Clearclad under the settlement agreement with Hawking Ltd. (Compl.¶ 29.) At least two acts by Defendants allegedly infringed Plaintiff's rights. First, on or before January 1998, Ralph Coxon registered an internet domain registration to use "Hawking International" and registered the name "www.hawkinginternational.com." (*Id.* ¶ 27). Second, Ralph Coxon filed a letter with the State Department of Assessments and Taxation in Maryland dated June 5, 1998 that stated "Please be advised that as the owner of the name 'Hawking International', I hereby authorize for you to accept for filing and recording among you [sic] records the Articles of Organization for Hawking International, LLC., signed Ralph Coxon."(*Id.* ¶ 31.)Defendants do not dispute those facts, but challenge Plaintiff's notion that its license was exclusive.

This alleged conduct is the basis of the complaint for unfair competition, breach of covenant not to compete, breach of fiduciary duties, fraud, conspiracy, and violation of Illinois' trade secrets law. All Defendants move to dismiss or transfer the case to the District of Maryland in four separate motions. The court addresses each motion in turn.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 7
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*DISCUSSION*

I. Standard of Review

A. Personal Jurisdiction

"In deciding a motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits from both parties."*Glass v. Kemper Corp., 930 F.Supp. 332, 337 (N.D.Ill.1996).* All factual disputes in the pleadings and affidavits are resolved in favor of the plaintiff, but facts contained in the defendants' affidavits that remain unrefuted by the plaintiff are deemed true. *Id.* (citations omitted). The burden of establishing a prima facie case for personal jurisdiction is on the plaintiff. *See Steel Warehouse of Wisc. Inc. v. Leach,* 154 F .3d 712, 714 (7th Cir.1998).

B. Motion to Transfer Venue

**\*8** In deciding a motion to transfer, the court must weigh the public interest and the private interests of the parties to the litigation. *Sanders v. Franklin,* 25 F.Supp.2d 855, 857 (N.D.Ill.1998) (citation omitted). The moving party bears the burden of demonstrating that the transferee forum is "clearly more convenient ." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir.1986) (citations omitted). It is not sufficient if the transfer will merely shift the burden from one party to the other. *Sky Valley Ltd Partnership v. ATX Sky Valley, Ltd.,* 776 F.Supp. 1271, 1276 (N.D.Ill.1991) (citations omitted)."The determination of whether a case should be transferred pursuant to § 1404(a) is committed to the sound discretion of the trial court."*Law Bulletin Publ'g Co. v. LRP Publications, Inc.,* 992 F.Supp. 1014, 1017 (N.D.Ill.1998) (citing *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989); other citation omitted).

C. Motion to Dismiss

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief."*Kennedy v. National Juvenile Detention Ass'n,* ___ F.3d ___, No. 98-1458, 1999 WL 595483, at \*2 (7th Cir. Aug. 9, 1999) (quoting *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993)). The court regards all well-pleaded facts as true and looks at them in the light most favorable to the plaintiff. *Id.* (citations omitted).

II. The Four Motions

A. Xontal's Motion to Transfer or to Dismiss Counts II, III, and IV for Failure to State a Claim

Defendant Xontal moves to transfer this action to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a). Specifically, Xontal argues that transfer is appropriate because: (1) a substantial part of the events in this lawsuit occurred in Maryland; (2) the majority of witnesses are located in Maryland or elsewhere outside Illinois; and (3) transfer will serve the interest of justice. Alternatively, it asks that Counts II, III, and IV be dismissed pursuant to FED. R. CIV. P. 12(b)(6).[FN9] Plaintiff urges the court to deny the motion because transfer is not convenient for the parties, does not benefit a majority of the witnesses, and does not advance the interests of justice. Plaintiff also contends that it has pled sufficient facts to withstand a motion to dismiss as to Counts II, III, and IV. The court looks at the issues separately below.

> FN9. Defendant Xontal has waived its right to file a reply brief on this motion. Presumably, it incorporates the arguments made by its co-Defendants' motions. Unfortunately, not all issues are analyzed in the same way for all Defendants (e.g., the individual Defendants' alleged wrongful act). This problem is exacerbated by the fact that Xontal's initial brief on this issue was exactly that-preliminary and brief (only one page long). Had Xontal filed a more extensive initial memorandum or filed its own reply brief, the court would not have to extrapolate from the other Defendants' briefs for pertinent facts and arguments. The court notes the Seventh Circuit's recent admonition that "[a] brief must make all arguments accessible ... rather than ask [the judge] to play archaeologist with the record,"*DeSilva v. DiLeonardi,* ___ F.3d ___, Nos. 99-1754, 99-1769, 1999 WL 430176, at \*2 (7th Cir. June 8, 1999), but has in this case made every effort to glean factual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

information from the full record.

1. Motion to Transfer Venue

"A district court may transfer a civil action for the convenience of the parties and witnesses [and] in the interests of justice ... to any other district or division where it might have been brought."28 U.S.C. § 1404(a). The court has discretion to transfer the case pursuant to § 1404(a) if: (1) venue was proper in the transferor court; (2) venue and jurisdiction would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice. *Sanders, 25 F.Supp.2d at 857* (citation omitted).

**\*9** The final element in the § 1404(a) analysis involves a balancing of private and public interests. Private interest factors include: (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) convenience of the witnesses, and (5) convenience to the parties. *Law Bulletin, 992 F.Supp. at 1017* (citations omitted). Public interest factors focus on whether a change in venue will promote the nebulous "interests of justice" and include: (1) the relation of the community to the issues in the litigation and the desirability of resolving controversies in their locale, (2) the court's familiarity with applicable law, and (3) congestion of the respective dockets and the prospects of earlier trial. *Sanders, 25 F.Supp.2d at 857* (citation omitted).

Neither party has argued that the first two elements of § 1404(a) are not satisfied. The court therefore focuses its analysis on the final consideration, the convenience of parties and witnesses and the interest of justice factors.

a. Private Interest Factors: Convenience of Parties and Witnesses

(1) Plaintiff's Choice of Forum

The plaintiff's choice of forum is entitled to substantial weight, especially if it is the plaintiff's home forum. *United Air Lines, Inc. v. Mesa Airlines, Inc., 8 F.Supp.2d 796, 798 (N.D.Ill.1998)* (citation omitted). The balance must weigh strongly in the defendant's favor before a plaintiff's choice of forum

is disturbed. *Id.* (citation omitted). Plaintiff Clearclad is an Illinois corporation with its principal place of business in Harvey, Illinois. That Clearclad has brought this action in its home forum thus weighs heavily against transfer.

Besides a bald assertion that a substantial part of the events in this action occurred in Maryland, Xontal does not respond to this issue at all. Defendants Timothy Coxon and Hawking LLC, however, argue that "where the plaintiff's chosen forum is not the situs of material events, plaintiff's chosen forum is entitled to less deference."*Law Bulletin, 992 F.Supp. at 1017* (citation omitted). Defendants argue that Maryland, rather than Illinois, is the situs of the majority of the events alleged in the complaint. The court considers this argument in connection with Xontal's motion below.

(2) Situs of Material Events

Although the court can imagine arguments that favor Xontal, Xontal itself has not met its burden of showing that Maryland was the situs of material events. In the court's view, the primary allegation against Xontal centers on alleged violations of provisions in the Distribution Agreement between Xontal and Hawking Inc. through unfair competition. According to Plaintiff, the agreement was negotiated and entered into in Illinois. (Response to Defendant Xontal's Motion to Transfer or, Alternatively, to Dismiss Counts II, III and IV for Failure to State a Claim Upon Which Relief can be Granted (hereinafter "Pl. Response to Xontal's Motion"), at 6.) Defendants themselves assert that Hawking Inc. drafted the agreement (*see* R. Coxon Aff. ¶ 5), suggesting that the negotiations and drafting took place in Illinois, where Hawking Inc. was located. In addition, the other contract at issue (the settlement agreement between Hawking Inc. and Hawking Ltd.) was also negotiated and entered into in Illinois. (Pl. Response to Xontal's Motion, at 6.)

**\*10** Nor is it apparent that the alleged diversion of sales inquiries and sales took place in Maryland. Xontal's market appears to have covered much of the eastern and southeastern portions of the United States, not just Maryland. (*See* Compl. ¶ 3.) And the incident at the SUR/FIN show in 1998 occurred in Minneapolis, Minnesota. (*See id.* ¶ 37.)Lastly, the court notes that the alleged diversion of sales

Not Reported in F.Supp.2d                                                                    Page 9
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

transpired with customers outside Maryland: Kwikset is in Oklahoma, Wilshire Lighting is in Massachusetts, Hager is in Alabama, and Clariant is in North Carolina. (*See* Lofstram Aff. ¶ 7.) The court therefore finds that Plaintiff Clearclad's choice of Illinois as the forum is entitled to substantial deference.

(3) Relative Ease of Access to Sources of Proof

Xontal has not addressed this issue directly. Based on the record, however, the court concludes that consideration of this factor neither weighs in favor of nor against transfer. Plaintiff's documents are located in Illinois. (Kittridge Aff. ¶ 49.) Defendants Xontal and Ralph Coxon keep records exclusively in Maryland. (R. Coxon Aff. ¶ 11.) Defendant Timothy Coxon keeps his personal records in Georgia, while the records for Hawking LLC are spread among Georgia, Maryland, and New Jersey. (T. Coxon Aff. ¶ 13.) Records for Defendants Hawking Ltd., Hawkes, and Ryder are all located in the United Kingdom. (Hawkes Aff. ¶ 13.)

Transfer to the District of Maryland would only shift the burden from one party to the other, an insufficient basis for transfer. *See Sky Valley,* 776 F. Supp at 1276. The majority of the Defendants themselves do not keep all of their records in Maryland. Finally, moving documents (even by the boxful) is not such an unreasonable burden in litigation as to warrant transfer. In light of modern technological advances and wide availability of computers, modems, facsimile machines, etc., moving information from one place to another does not create the onerous burden it once may have. *See Wesley-Jessen Corp. v. Pilkikngton Visioncare, Inc.,* 157 F.R .D. 215, 218 (D.Del.1993). Therefore, this element does not influence the court's decision.

(4) Convenience of the Witnesses

Convenience of witnesses is often the controlling factor for § 1404(a) purposes. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.,* 42 F.Supp.2d 821, 834 (N.D.Ill.1999); *Law Bulletin,* 992 F.Supp. at 1018;*Riviera Finance v. Trucking Servs., Inc.,* 904 F.Supp. 837, 839 (N.D.Ill.1995). The "party seeking transfer under § 1404(a) should specify the key witnesses it intends to call and make a general statement of their expected testimony."*College Craft

*Cos., Ltd. v. Perry,* 889 F.Supp. 1052, 1055 (N.D.Ill.1995) (citing *Heller Fin.,* 883 F.2d at 1293; other citations omitted). Further, a court should focus on the convenience of potential *non-party* witnesses on the assumption that witnesses within the control of the party calling them (i.e., employees) will appear voluntarily. *Id.* (citation omitted)

**\*11** Xontal has not provided the names of expected, or even potential, witnesses. It has only averred that the majority of witnesses are located in Maryland and elsewhere outside Illinois. Defendants Timothy Coxon and Hawking LLC state that they believe the parties themselves will be the primary witnesses. Plaintiff notes that of Defendants' potential witnesses, then, only Ralph Coxon resides in Maryland. For example, Timothy Coxon resides in Georgia, while Leonard Hawkes and Peter Ryder both reside in the United Kingdom.

Plaintiff, on the other hand, plans to call a number of witnesses who reside in Illinois, including: Edward Kittridge (President of Clearclad); Jack Lofstram (Vice-President of Sales at Clearclad); and four other witnesses whose roles in the dispute are at this point unidentified: Patrick Kittridge, Matthew Kittridge, Maurice Brady, and William Heuring. Other potential witnesses for Plaintiff include representatives of the companies that were once Clearclad customers, whose residences are all outside Maryland and Illinois. As Plaintiff puts it, "No matter where this litigation is resolved, these witnesses from the customer companies will need to travel outside the district where they reside."(Pl. Response to Xontal's Motion, at 5.) The court agrees with Plaintiff that the convenience of one party witness (Ralph Coxon) at the expense of at least six other witnesses does not justify changing the venue to Maryland.

(5) Convenience of the Parties

The court also considers the convenience of the litigants, specifically their respective residences and their ability to bear the expenses of litigating in a particular forum. *Brandon Apparel,* 42 F.Supp.2d at 834. It is axiomatic that litigating outside of one's home forum is always more burdensome than litigating at home.

Xontal does not address the issue, and Plaintiff concedes that this factor is, at best, a tie. (*See* Pl.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Response to Xontal's Motion, at 5.) A majority of the parties reside outside of Illinois and Maryland, making neither forum clearly more convenient. Additionally, none of the parties appears to be in a better position to bear the expenses of litigating in a foreign forum. The court thus finds that this factor neither supports nor argues against transfer.

b. Public Interest Factors: Interests of Justice

Whether transfer is in the interests of justice involves analysis of three factors: (1) relation of the locale to the controversy, (2) court's familiarity with applicable law, and (3) speed of litigation. None of the factors favor transfer here.

Since neither party addresses the first issue, the court simply finds that consideration of this factor is neutral and does not tilt the scale in favor of one party. As for familiarity with the law, Defendants Timothy Coxon and Hawking LLC contend that Maryland courts are just as equipped as this court to apply Illinois law on the breach of contract and conspiracy claims and note that Maryland itself has a trade secrets act. Defendants nevertheless admit that this element neither weighs in favor of nor against transfer. For purposes of evaluating the final factor, the court turns to reports from the Federal Court Management Statistics for the period ending September 30, 1998. ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, 1998 FEDERAL COURT MANAGEMENT STATISTICS.The two most relevant statistics to the court's current analysis are: (1) the median months from filing to disposition, and (2) the median months from filing to trial. *Brandon Apparel*, 42 F.Supp.2d at 835 (citations omitted). The median months from filing to disposition was 6 months in both the Northern District of Illinois and the District of Maryland. The median months from filing to trial was 25 months in the Northern District of Illinois compared to only 18 months in the District of Maryland. This case would arguably proceed to trial 7 months earlier in the District of Maryland, but "[t]he use of statistics must be examined in light of the other considerations in the interests of justice."*United*, 8 F.Supp.2d at 800. In weighing the above factors, the interests of justice do not clearly require transfer. *See id.*

c. Resolution

*12 A balance of the above considerations weighs against transfer to the District of Maryland. Xontal has failed to show that the District of Maryland is clearly the more convenient forum, and the interests of justice do not clearly favor that forum. Clearclad brought this action in its home forum, and none of the other factors favor transfer. Xontal's motion for transfer of venue is denied.

2. Motion to Dismiss Count II: Breach of Covenant not to Compete in Agreement

Defendant Xontal briefly argues that Count II must be dismissed because the covenant not to compete was conditioned "upon suitable compensation by Principal," (Distribution Agreement ¶ 5.2), and Ralph Coxon states that no suitable compensation was ever received, (*See* R. Coxon Aff. ¶ 15.)

Under the Federal Rule's system of notice pleading, however, a plaintiff is not required to plead all that it must prove nor required to plead specific facts. *Jackson v. Marion County*, 66 F .3d 151, 153 (7th Cir.1995). A plaintiff may even plead conclusions so long as they provide the defendant with at least minimal notice of the claim. *Id.* at 154.In addition, Plaintiff asserts in its argument that suitable compensation was provided to Xontal in the form of "mutual promises and mutual benefits which flowed between Plaintiff and Defendants," (Pl. Response to Xontal's Motion, at 11) and by providing training, marketing materials, and furnished booths and space at trade shows, (Kittridge Aff. ¶ 42.)

Plaintiff has alleged enough to meet the low threshold on a motion to dismiss. The allegations of the complaint, though bare of specific facts, notify Defendants the nature of this claim for breach of the covenant not to compete. The court adheres to the common wisdom that it should not inquire into the adequacy of the consideration to support a promise, only its existence. *See Wagner v. Nutrasweet Co.*, 95 F.3d 527, 532 (7th Cir.1996) (citations omitted). Furthermore, whether the alleged suitable compensation described by Plaintiff was intended to support the non-compete clause is not a question for the court to determine at this juncture. The question of fact created by the parties' affidavits precludes dismissing this claim. The motion to dismiss Count II is denied.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

3. Motion to Dismiss Count III: Breach of Fiduciary Duties

Xontal urges dismissal of Count III because Plaintiff does not allege what fiduciary duty is owed nor how it arose. Moreover, Xontal points out that the Distribution Agreement explicitly provides that no special relationship existed between Clearclad and Xontal. In pertinent part, the Distribution Agreement provides:

Nothing contained in this Agreement shall create the relationship of Principal and Agent nor that of Partnership between the Principal and the Distributor nor shall the Distributor have any right or authority to enter into any agreement or to assume or create any obligation expressed or implied on behalf of the principal without prior written consent of the Principal.

**\*13** (Distribution Agreement ¶ 15.)

Plaintiff does not dispute that the Distribution Agreement included such a provision, but contends that a fiduciary duty nonetheless arose based on custom and practice of the parties. Plaintiff's only supposed support for this proposition is Kittridge's affidavit, stating that Xontal, its officers, and employees were authorized to make representations, warranties, and agreements on behalf of Clearclad with existing and potential customers and that these arrangements were honored by Clearclad. (*See* Kittridge Aff. ¶ 44.) In Plaintiff's view, this somehow creates an "ongoing agency relationship with its attendant fiduciary duties of good faith, fair dealing, honestly [sic] and loyalty."(Pl. Response to Xontal's Motion, at 15.)

"It is well established under Illinois law that parties to a contract ... do not owe a fiduciary duty to one another."*Bixby's Food Systs., Inc. v. McKay,* 985 F.Supp. 802, 808 (N.D.Ill.1997); *see also Oil Express Nat'l, Inc. v. Burgstone,* 958 F.Supp. 366, 370 (N.D.Ill.1997) (citing *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 280 (7th Cir.1992); other citation omitted). The explicit disclaimer of an agency relationship in the Distribution Agreement further indicates that Xontal and Clearclad were not in a fiduciary relationship.

Plaintiff's responses to this argument are unpersuasive. Citing to *Schlunk v. Volkswagenwerk Aktiengesellscheft,* 145 Ill.App.3d 594, 602, 503 N.E. 1045, 1050 (1st Dist.1986), Plaintiff argues that written disclaimers of an agency relationship are not controlling. Although the *Schlunk* court did not explain its rationale, the decision does suggest that the exercise of control is more important in finding an agency relationship. *See id.*Indeed, focusing on the issue of control is consistent with the common law view of fiduciary duty, which is imposed

when the disparity between the parties in knowledge or power relevant to the performance of an undertaking is so vast that it is a reasonable inference that had the parties in advance negotiated expressly over the issue they would have agreed that the agent owed the principal the high duty ... because otherwise the principal would be placing himself at the agent's mercy.

*Burdett v. Miller,* 957 F.2d 1375, 1381 (7th Cir.1992). This is not the type of situation described or even alleged by Plaintiff, however. There is no allegation that Clearclad reposed trust and confidence in Xontal, who thereby gained influence and superiority over Clearclad. *See id.*Moreover, both parties are commercial businesses, presumably headed by equally capable and business-minded officers.

That leaves Plaintiff with its assertion that the custom and practice of the parties created an ongoing agency relationship and corresponding fiduciary duties. The only evidence that Plaintiff proffers is Kittridge's affidavit, which baldly asserts, "Based on the custom and practices of the parties, Xontal, its officers, employees and agents were fiduciaries of Hawking International Inc. and Clearclad."(Kittridge Aff. ¶ 44.) This is not a factual assertion, but a legal conclusion that contradicts the terms of the parties' agreement, which this court need not accept. *See Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992), *cert. denied,*508 U.S. 942 (1993) (court is not bound by the plaintiff's legal characterizations of the facts). Nothing else in the record suggests that the custom and practice in the industry generally or these parties particularly was to create an agency relationship. Indeed, nothing about an arms-length business relationship between two corporations based on a written contract is characteristic of a fiduciary relationship. *See Pro Football Weekly, Inc. v.*

Not Reported in F.Supp.2d                                                                                Page 12
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*Gannett Co., 988 F.2d 723, 727 (7th Cir.1993)* (finding that such a situation does not support allegations of a fiduciary duty); *see also McKay, 985 F.Supp. at 808* ("the allegation that 'one businessman simply trusted another to fulfill his contractual obligations' is insufficient to state a fiduciary duty"). Neither has Plaintiff cited to any authority imposing an agency relationship based on custom and practice despite an express written agreement otherwise. Finding no basis for a fiduciary duty, the court grants the motion to dismiss Count III against all Defendants for breach of fiduciary duties.

4. Motion to Dismiss Count IV: Fraud

*\*14* Xontal's only argument with respect to the fraud claim is that it fails to meet the standards for pleading fraud as required by Rule 9(b) of the Federal Rules. Plaintiff responds that it has, to the best of its ability and based on the knowledge within its control, alleged specific fraudulent statements, identified who made such statements, alleged when and where the statements were made, and alleged how they were fraudulent-all to the satisfaction of Rule 9(b).

The basic elements of common law fraud are: (1) a false representation of material facts; (2) by a party who knows or believes it to be false; (3) with the intent to induce an act; (4) action in reliance on the statement; and (5) injury to the plaintiff as a consequence of that reliance. *McKay, 985 F.Supp. at 808* (citation omitted). Fraud may also consist of the omission or concealment of a material fact if accompanied by the intent to deceive under circumstances that create the opportunity and duty to speak. *Id.* (citation omitted). Allegations of fraud are subject to a heightened pleading standard under *FED. R. CIV. P. 9(b)*, which requires a plaintiff to plead "all averments of fraud ... with particularity."*Goren v. New Vision Int'l, Inc., 156 F.3d 721, 726 (7th Cir.1998)* (citations omitted). A plaintiff must plead the "who, what, when, and where" of the alleged fraud. *Uni* *Quality, Inc. v. Infotronx, Inc.,* 974 918, 923 (7th Cir.1992). The more stringent pleading standard recognizes that accusations of fraud can do serious damage to the goodwill of a business or professional person, and persons ought not toss such accusations into complaints to induce advantageous settlements or for other ulterior purposes. *Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir.1992).*

Nonetheless, Rule 9(b) is to be read in the context of our liberal notice pleading system. *Barr v. Barr, 207 B.R. 168, 172 (N.D.Ill.1997)* (citations omitted)."Thus, it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have adequately been set forth."*Id.* (citing *Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir.1992)*). Additionally, a plaintiff need not plead facts which it may lack prior to discovery. *Id.* (citing *Katz v. Household Int'l., Inc., 91 F.3d 1036, 1040 (7th Cir.1996)*). Lastly, where a plaintiff alleges fraud against a third party, less detail may be required under Rule 9(b) because the plaintiff may not have access to all the facts necessary to detail the claim. *Uni* *Quality,* 974 F.2d at 923 (citations omitted).

Xontal mistakenly looks to only one paragraph in the complaint to argue that it is insufficient to meet Rule 9(b). The paragraph alleges, "Defendants have made false representations, false promises and omissions regarding material matters as alleged herein including that they would act in an honest, trustworthy and loyal manner, not divulge or misuse confidential materials and trade secrets, and not engage in unlawful, competitive acts."(Compl.¶ 76.) Were this the only paragraph supporting the fraud allegation, the court might well agree with Xontal's conclusion. Clearclad's complaint, however, is replete with instances of alleged fraud. For instance, Plaintiff alleges that Xontal told Hager, a Clearclad customer, that Clearclad had "messed up a $3 million job" in Italy, which was untrue. (Compl.¶ 42.) Plaintiff also alleges that during negotiations with Clariant, a potential Clearclad customer, Defendants misrepresented to Clariant that Clearclad would not provide a free "trial system." (*Id.* ¶ 48 .)Without comment on the merits of the fraud claim, the court simply concludes that Plaintiff has alleged enough to meet Rule 9(b)'s pleading requirements. The motion to dismiss Count IV is denied.

B. Defendant Ralph Coxon's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer or to Dismiss Counts II, III, and IV for Failure to State a Claim

*\*15* Defendant Ralph Coxon moves to dismiss this action for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) or for change of venue to

Not Reported in F.Supp.2d                                                                                          Page 13
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

the District of Maryland pursuant to 28 U.S.C. § 1404(a). Alternatively, he moves to dismiss Counts II, III, and IV for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). Plaintiff counters that this court does have personal jurisdiction over Ralph Coxon based on his tortious conduct, which affected Clearclad's business in Illinois. Plaintiff again maintains that Counts II, III, and IV withstand a motion to dismiss. The court looks at the issues separately below.

1. Motion to Dismiss for Lack of Personal Jurisdiction

As indicated above, Plaintiff charges all Defendants with federal unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125. The Lanham Act does not specifically authorize this court's exercise of jurisdiction. This court therefore has personal jurisdiction over Defendants only if an Illinois court does. See Janmark, Inc. v. Reidy, 132 F.3d 1200, 1201 (7th Cir.1997). Deciding whether an Illinois state court would have jurisdiction entails a three-part inquiry: (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997). Because the Illinois long-arm statute authorizes jurisdiction to the constitutional limits, however, the Seventh Circuit has held that the three-part inquiry collapses into two constitutional inquiries-one state and one federal. Id. If jurisdiction is improper under either the United States or Illinois Constitution, the court cannot exercise jurisdiction over the nonresident party. Brandon Apparel Group, Inc. v. Quitman Mfg. Co., 42 F.Supp.2d 821, 828 (N.D.Ill.1999) (citation omitted). Following the doctrine that "federal courts should avoid addressing federal constitutional issues when it is possible to dispose of a case on pendent state grounds," Triple G. Landfills, Inc. v. Board of Comm'rs of Fountain County, Ind., 977 F.2d 287, 291 (7th Cir.1992), the court addresses the state constitutional issue first. See RAR, 107 F.3d at 1276.

a. State Due Process

The Illinois Constitution contains a guarantee of due process that is separate and independent from the federal due process clause. Brandon, 42 F Supp.2d at 828 (citing Rollins v. Ellwood, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990)). To

subject a nonresident defendant to personal jurisdiction in Illinois, the party's connection with Illinois should enable it "to predict that it might be subject to the jurisdiction of this state"; a "random, fortuitous, or attenuated" connection does not suffice. Berndorf Belt Systs, Inc. v. Ascona Food Group (Canada) Ltd., No. 98 C 1055, 1998 WL 851496, at *5 (N.D.Ill.Dec. 3, 1998) (quoting Autotech Controls Corp. v. K.J. Electric Corp., 256 Ill.App.3d 721, 628 N.E.2d 990, 995-96 (1st Dist.1993)).

**\*16** Unfortunately, two problems preclude this court from fully addressing this issue. First, although the "Illinois Supreme Court has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections[,]" it has "given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." RAR, 107 F.3d at 1276. In other words, there is scant case law to guide this court. Second, the parties have not briefed the state constitutional issue as such; in fact, Defendant Ralph Coxon offers no analysis under the Illinois Constitution. Under the circumstances, the court finds no reason in this case to distinguish Illinois' due process guarantee from federal due process protections. See Lawson v. Tax Lien Resources Group, LLC, No. 98 C 245, 1998 WL 957331, at *3 (N.D.Ill.Dec. 15, 1998). Hence, if federal due process requirements are satisfied, the court finds jurisdiction over Ralph Coxon appropriate.

b. Federal Due Process

The Due Process Clause of the Fourteenth Amendment limits the circumstances in which a state may assert personal jurisdiction over nonresident individuals and corporations. See Pennover v. Neff, 95 U.S. 714, 733 (1878). Under the traditional rubric, a defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Courts have typically considered the due process analysis as a two-part inquiry: (1) the court must determine whether "minimum contacts" exist and, if so, (2) the court must determine whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. Tingstol Co. v. Rainbow Sales, Inc., 8 F.Supp.2d

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

1113, 1115 (N.D.Ill.1998).

(1) Minimum Contacts

Minimum contacts with the forum state are established when a defendant purposefully avails itself of the rights and privileges of conducting activities in the state such that it invokes the benefits and protections of that state's law. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). In other words, the defendant's activities must be of such a quality and nature that it would reasonably anticipate being haled into court there. *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Such a defendant has enjoyed the benefits and protections of that state's laws, and jurisdiction over it satisfies due process. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

Subject to the limits of due process, a court may exercise two types of personal jurisdiction over an out-of-state defendant: general and specific. General jurisdiction arises when the nonresident defendant has "continuous and systematic general business contacts" with the forum state. *Glass v. Kemper Corp.,* 930 F.Supp. 332, 338 (N.D.Ill.1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984)). The contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities."*Id.* (citing *International Shoe,* 326 U.S. at 318.) Plaintiff does not really try to fit Ralph Coxon under general jurisdiction, and it is clear that he would not fall under this court's general jurisdiction over his person: he does not live and has never lived in Illinois; does not own or maintain a residence in Illinois; does not maintain an office or bank account in Illinois; does not maintain a telephone number in Illinois; has not voted or been liable for taxes in Illinois; and has come to Illinois only on matters at the basis of Plaintiff's specific claims. (*See* R. Coxon Aff. ¶ 14.)

**\*17** Specific jurisdiction, on the other hand, arises when the defendant's contacts with the forum are related to the controversy underlying the litigation. *Glass,* 930 F.Supp. at 338 (citations omitted). If a relationship between the litigation and forum exists, the plaintiff need only show that the defendant's contacts with the forum reach a "minimum"

threshold. *Id.* (citation omitted). Defendant denies even these contacts, maintaining that all allegations against Coxon arise out of a relationship with other Defendants, who are all nonresident defendants.

What Defendant Coxon fails to recognize, however, is that "the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders."*Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir.1997). In *Janmark,* the plaintiff, a seller of mini shopping carts, brought action against a competitor and its operator, seeking declaratory judgment and asserting a claim of tortious interference with prospective economic damage. *Id.* at 1201.Finding that a single phone call from defendant in California to a customer in New Jersey could not be a tort "within" Illinois, the district court dismissed the defendant for lack of personal jurisdiction. *Id.* Reversing, the Seventh Circuit reasoned that since without an injury there is no tort and that a wrong does not become a tort until an injury has occurred, the location of the injury is vital to understanding where the tort occurred. *Id.* at 1202.Because the injury took place in Illinois, the tort occurred in Illinois and was thus actionable in Illinois. *Id.*

In this case, the injuries from the alleged torts (bad financial consequences) were felt in Illinois, the home for Plaintiff. That Ralph Coxon's alleged wrongdoings may have taken place outside the state do not affect that result. Plaintiff has, nonetheless, presented sufficient evidence to show that Ralph Coxon entered Illinois on numerous occasions to conduct Xontal's business. Ralph Coxon himself states, in his affidavit, that he made business trips to Illinois (the record does not indicate how many), including a trip in September 1997 when he was negotiating the new Distribution Agreement with Clearclad. (R. Coxon Aff. ¶ 12.) Kittridge adds that Ralph Coxon "engaged in hundreds of telephone calls, faxes and correspondence into the State of Illinois" regarding business matters. (Kittridge Aff. ¶ 37.) Ralph Coxon benefitted from his activities in Illinois, and he could have reasonably foreseen that he might be haled into an Illinois court. At a minimum, the court can exercise specific jurisdiction over Defendant Ralph Coxon in this lawsuit, which related to the relationship arising from Coxon's contacts.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 15
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

(2) Fair Play and Substantial Justice

Having determined that Ralph Coxon has minimum contacts with Illinois, the court next considers whether the assertion of jurisdiction comports with fair play and substantial justice. The court's inquiry considers the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficient resolution of disputes, and the shared interest of the several states in furthering fundamental social policy. *Logan Prods., Inc. v. Optibase, Inc.,* 103 F.3d 49, 53 (7th Cir.1996). Once minimum contacts have been established, the defendant can escape jurisdiction only by making a "compelling case" that forcing it to litigate in the forum state would be unreasonable. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 109 (1987).

**\*18** Neither party discusses this matter. Given the heavy burden placed on defendant at this stage to overcome jurisdiction, the court cannot conclude that Coxon has met that burden. Moreover, the court finds that the exercise of jurisdiction over Coxon is not unfair. Illinois has a legitimate interest in holding him answerable on a claim related to the contacts he arguably established in Illinois, namely with Clearclad. *See Burger King,* 471 U.S. at 482-83.

c. Fiduciary Shield Doctrine

As another basis for his argument that the court lacks personal jurisdiction over him, Ralph Coxon contends that he benefits from the fiduciary shield doctrine. Under the doctrine, "a court cannot exercise jurisdiction over a nonresident defendant who has performed acts in Illinois solely as a representative of his employer, and not for his personal benefit." *Glass,* 930 F.Supp. at 340 (quoting *Rollins v. Ellwood,* 141 Ill.2d 244, 275, 565 N.E. 1302, 1316 (1990)). The shield is withdrawn if the agent was acting also or instead on his own behalf, *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir.1994), *cert. denied,* 514 U.S. 1111 (1995), and does not apply when the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction, *see Brujis v. Shaw,* 876 F.Supp. 975, 978 (N.D.Ill.1995) (citations omitted). Though recognized by courts in Illinois, the Seventh Circuit has observed that the doctrine has

been criticized and rejected by many jurisdictions. *Id.* (citations omitted). Lastly, the doctrine is not absolute, but discretionary or "equitable." *Id.* (citations omitted).

This is not the type of case for application of the doctrine. The Illinois Supreme Court first recognized and applied the doctrine to a Maryland policeman who had been sent into Illinois to serve an arrest warrant and was later sued in Illinois for false arrest based on that entry. *See Rollins,* 576 N.E.2d 107, 114-15. The court concluded that it was unfair and unreasonable to assert personal jurisdiction over an individual who sought the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal. *Id.* at 1318.

Without making any findings about whether Ralph Coxon was the alter ego of Xontal or whether the corporate veil should be pierced, the court concludes that equity does not require application of the doctrine to Ralph Coxon. He was ostensibly in Illinois to serve the interests of his employer, Xontal, but that essentially coincides with his personal interest. He was not following the orders of any supervisor, but acted with discretion regarding all matters. Ralph Coxon's "fiduciary shield" objection is overruled.

d. Resolution

Finding minimum contacts with Illinois and the exercise of personal jurisdiction over Ralph Coxon to be fair, the court concludes that Illinois may exercise personal jurisdiction over him. Defendant Ralph Coxon's motion to dismiss for lack of personal jurisdiction is denied.

2. Motion to Transfer Venue

**\*19** Defendant Ralph Coxon moves to transfer this case to the District of Maryland for the same reasons advanced by Defendant Xontal, namely that: (1) a substantial part of the events of this action occurred in Maryland; (2) the majority of witnesses are located in Maryland or elsewhere outside Illinois; and (3) transfer will serve the interest of justice. The analysis of the transfer issue for Defendant Coxon is identical to the analysis of this issue for Defendant Xontal. As such, for the reasons outlined above, the court denies the motion to transfer venue.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 16
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

3. Motion to Dismiss Counts II, III, and IV

Defendant Ralph Coxon makes the same arguments with respect to these claims as did Defendant Xontal. For the reasons discussed above, the court denies the motion to dismiss Count II and IV and grants the motion to dismiss Count III.

C. Defendants Timothy Coxon and Hawking LLC's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer or to Dismiss Counts II, III, and IV for Failure to State a Claim

In now familiar fashion, Defendants Timothy Coxon and Hawking LLC move to dismiss for lack of personal jurisdiction, to transfer venue, or to dismiss Counts II, III, and IV for failure to state a claim. Plaintiff responds that the court has personal jurisdiction over both Defendants and that Counts II, III, and IV state a claim for relief. The court turns to the issues in turn.

1. Motion to Dismiss for Lack of Personal Jurisdiction

As discussed above, this court has personal jurisdiction over Defendants if Illinois and federal due process requirements are met. *See supra* Part II.B.1. Plaintiff does not attempt to demonstrate general jurisdiction, and given Timothy Coxon's limited contacts with Illinois (*see* T. Coxon Aff. ¶¶ 10-11), the court would find general jurisdiction lacking. Specific jurisdiction, however, requires a much lesser showing of contacts with the forum state. Just how much is debated vigorously by the parties here.[FN10] The parties present a difficult question about the propriety of basing specific jurisdiction wholly on "injury" from a business tort that is felt in the forum state. Specifically, Defendants argue that specific jurisdiction exists over Timothy Coxon and Hawking LLC only if they "entered" Illinois; injury in Illinois based on acts outside of Illinois is an insufficient basis. Plaintiff, on the other hand, cites to the Seventh Circuit's opinion in *Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir.1997) as evidence that injury in Illinois, even as a result of extra-jurisdictional acts, is enough to confer jurisdiction to Illinois courts. Because understanding of the *Janmark* case is essential to this discussion, the court reviews the analysis in that case.

FN10. It is true that Defendants Xontal and Ralph Coxon incorporated by reference all arguments made by the other Defendants, which would presumably include this particular issue on specific jurisdiction. Nevertheless, for convenience, the court discusses the issue as presented by these particular Defendants' briefs (i.e., with the specific details of Timothy Coxon and Hawking LLC).

a. Specific Jurisdiction Based on Injury in the Forum State

In *Janmark,* as detailed above, the Seventh Circuit held that injury in the forum state was sufficient to confer jurisdiction over an extra-jurisdictional business tortfeasor. In providing additional reasoning, the court cited to the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783 (1984), which held that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor. In *Calder,* the entertainer Shirley Jones sued the author and editor of a *National Enquirer* article for libel.*Id.* at 785.Jones sued the Florida resident in California, and the defendant moved to dismiss for lack of personal jurisdiction. *Id.* at 784-85.The Court found exercise of personal jurisdiction proper because the allegedly libelous story concerned the California activities of a California resident, impugned her reputation in California, was drawn from California sources, and was most widely distributed in California. *Id.* at 788-89.Ultimately, California was the "focal point both of the story and of the harm suffered."*Id.* at 789.

**\*20** Courts have read *Calder* as providing an "effects test," which has been interpreted to mean that "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum."*IMO Indus., Inc. v. Kiekart AG,* 155 F.3d 254, 261 (3d Cir.1998). The Seventh Circuit discussed *Calder* in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership,* 34 F.3d 410, 411-12 (7th Cir.1994), a case also cited by the court in *Janmark.*In *Indianapolis Colts,* the Indiana plaintiff sued the Maryland defendant for trademark infringement

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 17

based on the name of a football team, the "Colts." *Id.* at 411.Finding the injury of an impaired trademark to be felt mainly in Indiana and the state in which the injury occurs to be the state in which the tort occurs, the court relied on *Calder* to suggest that someone who commits a tort in Indiana should be amenable to suit there. *Id.* at 411-12.The court called that conception of personal jurisdiction "austere" and ultimately determined that it could rely on the fact that the defendant had also "entered the state in some fashion" to impose jurisdiction over the defendant. *Id.* at 412.In other words, the court did not resolve whether injury in the forum state is sufficient to confer jurisdiction. Neither did it rule that a defendant must always "enter" the forum state, consistent with the court's conclusion in *Janmark.*Resting on *Janmark's* holding, Plaintiff here notes that it was injured in Illinois and contends that it need not make an additional showing of "entry" into Illinois.

Defendants do not argue that *Janmark* is bad law (it is not) or inapposite (it is not), but follow a different strategy-they basically argue that other courts in this district are not strictly following *Janmark* because they are, in fact, requiring "entry" into Illinois to establish personal jurisdiction. In *Clipp Designs, Inc. v. Tea Bags, Inc.,* 996 F.Supp. 766, 767 (N.D.Ill.1998), the Illinois plaintiff sued the Minnesota defendants for trade dress infringement in violation of the Lanham Act. The court cited *Janmark* for the proposition that the state in which the injury occurs may require the wrongdoer to answer for its deeds even if the wrongdoing occurred outside of that state. *Id.* at 768 (quoting *Janmark* ). Having determined that the alleged injury occurred in Illinois, the court then stated that the "critical issue" is whether defendants "entered" Illinois in some fashion. *Id.* Although not cited or discussed by Defendants, the court has found another case from this district, which similarly included the "entering" prong as part of its analysis. *See Brown v. Citicorp,* No. 97 CV 6337, 1998 WL 341610, at *5 (N.D. Ill. June 22, 1998) (citing *Janmark,* but still finding "important" the fact that the defendant had "entered" the state).

**\*21** Defendants further call Clearclad's position "absurd" as a policy matter. In Defendants' view, under *Janmark,* a "plaintiff would obviate the need for any jurisdictional inquiry whenever a trademark,

copyright or unfair competition case is brought by an Illinois plaintiff, because the plaintiff's alleged injury will always be felt in Illinois."(Reply to Plaintiff's Response to Timothy Coxon's and Hawking International LLC's Motion to Dismiss or Transfer, or, Alternatively, to Dismiss Counts II, III and IV for Failure to State a Claim Upon Which Relief can be Granted (hereinafter "T. Coxon's Reply"), at 5.) Arguing that Plaintiff's position would trump congressional intent and due process, Defendants urge rejection of Plaintiff's argument.

The court recognizes the difficulty of the issue, considering the Seventh Circuit's pronouncement and the decisions by courts in this district that seemingly add more to the analysis. Nonetheless, this court considers *Janmark* authoritative and finds the situation at hand factually indistinguishable from the one in *Janmark.*Both the plaintiff here and in *Janmark* are Illinois residents that suffered injury in Illinois in the form of bad financial consequences as a result of an alleged business tort that occurred outside the state. Thus, under *Janmark,* the court need not make findings about whether the Defendants "entered" Illinois. Yet it is worth noting that Timothy Coxon's multiple business trips to Illinois appear to be enough to meet the low threshold showing of "entry" into the forum state. He clearly came into the state to conduct business with an Illinois-based company and hoped to profit from the relationship. Plaintiff also alleges that Timothy Coxon made hundreds of phone calls and faxes to the state during the alleged wrongdoing. This may be fairly construed as "entering" Illinois in "some fashion." The court therefore concludes that specific jurisdiction over the Defendants is proper in Illinois because the injury to Clearclad occurred in Illinois.[FN11]

FN11. The court has delved into the issue a bit further by examining into how the issue has been treated in other circuits. The result is an interesting one: every other circuit to decide the issue has reached a conclusion at odds with *Janmark* and held that injury from a business tort in the forum state by itself does not meet due process requirements. *See, e.g., IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254 (3d Cir.1998); *Noonan v. Winston Co.,* 135 F.3d 85 (1st Cir.1998); *ESAB Group, Inc. v. Centricut,* 126 F.3d 617 (4th Cir.1997), *cert. denied,*118 S.Ct. 1364

(1998); *Far West Capital, Inc. v. Towne,* 46 F.3d 1071 (10th Cir.1995); *General Elec. Capital Corp. v. Grossman,* 991 F.2d 1376 (8th Cir.1993); *Southmark Corp. v. Life Investors Inc.,* 851 F.2d 763 (5th Cir.1988). The circuit to consider the issue most recently was the Third Circuit in *IMO,* which explicitly rejected the reasoning of the Seventh Circuit in *Janmark.* Believing the Seventh Circuit read *Calder* too broadly, the court in *IMO* concluded that such a broad view "fails to accommodate *Calder's* emphasis on the fact that the forum must be the focal point of the harm and that the defendant must expressly aim the tortious activity at the forum." 155 F.3d at 264. The court further opined that *Calder* "did not change the fact that even in intentional tort cases the jurisdictional inquiry 'focuses on the relations among the defendant, the forum, and the litigation.'" *Id.* at 265 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780 (1984)). The Third Circuit then held that a court may exercise personal jurisdiction over a nonresident defendant if: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Id.* at 265-66. The third requirement means that the "plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

In light of the overwhelming number of circuits reaching the opposite conclusion of *Janmark,* the court concedes that the landscape in this area may change in the future. Nonetheless, at this juncture, the court is not inclined to depart from clear Seventh Circuit precedent.

Defendants submit that all of Timothy Coxon's contacts with Illinois occurred before Hawking LLC was created and before any of the alleged wrongs took place. Plaintiff calls that factual assertion inaccurate and instead alleges that he had numerous contacts with Illinois by mail, facsimile, and telephone, and had access to Clearclad's confidential information *while* he was engaging in wrongdoing. At this stage of the case, the court construes the facts

in favor of Plaintiff and, as such, agrees that Plaintiff has sufficiently alleged that Timothy Coxon's contacts with Illinois took place during the alleged wrongdoing.

b. Fiduciary Shield Doctrine

As did Ralph Coxon, Timothy Coxon also argues that the fiduciary shield doctrine should apply and relieve him of personal liability. Because he made all of his contacts with Illinois solely as a representative of Xontal, he argues that it would not be fair, just, and reasonable for this court to assert jurisdiction over him based on those contacts. Plaintiff counters that Timothy Coxon's acts in Illinois were discretionary and intentional acts that directly caused tortious injury in Illinois. This militates against applying the doctrine to him, argues Plaintiff.

**\*22** Timothy Coxon's case, as a salesperson or officer at Xontal, is in the court's opinion a closer call than that of his father, who was the president and obviously had the discretion to serve his own personal interest. Nonetheless, part of Plaintiff's Complaint charges Timothy Coxon with wrongdoing in his capacity as the President of Hawking LLC. Neither does the court find that equity requires application of the doctrine here. Hence, the fiduciary shield doctrine does not apply.

2. Motion to Transfer

Defendants Timothy Coxon and Hawking LLC advance the same arguments for why this action should be transferred to the District of Maryland pursuant to § 1404(a). For the reasons fully outlined above, the court denies the motion to transfer.

3. Motion to Dismiss Count II: Breach of Covenant not to Compete in Agreement

It is undisputed that Defendants Timothy Coxon and Hawking LLC are not parties to the Distribution Agreement between Xontal and Clearclad that is at the basis of Count III. Defendants therefore urge dismissal under the general rule in Illinois that an agent may not be held personally liable for a breach of contract by his principal when the agent has disclosed that he is acting on behalf of the principal. *See Strzelecki v. Schwarz Paper Co.,* 824 F.Supp.

821, 829 (N.D.Ill.1993) (citations omitted). Plaintiff contends that third parties may nonetheless be held liable for misuse of trade secrets if the third person knows of the breach of a confidential relationship when he acquired the trade secret. *See Colony Corp. v. Crown Glass Corp.,* 102 Ill.App.3d 647, 650, 430 N .E.2d 225, 228, 58 Ill.Dec. 283, 286 (1st Dist.1981) (citations omitted).

Defendants correctly note that *Colony Corporation* is inapposite for the claim that a third party can be sued for breach of contract; the case only addresses liability for misuse of a trade secret. Notably, however, Defendants fail to look closely (or possibly intentionally ignore) the full rule outlined in *Strzelecki,* Defendants' own authority. The court there recognized an exception to the general rule of no liability when the agent takes some active part in violating some duty the principal owes to a third person.*Strzelecki, 824 F.Supp. at 829* (citation omitted). This exception arguably applies to the present situation, in which Clearclad alleges that Defendants Timothy Coxon and Hawking LLC were directly involved in competing against Clearclad in violation of the non-compete clause. The court therefore denies the motion to dismiss Count II.

4. Motion to Dismiss Count III: Breach of Fiduciary Duties

Defendants contend that no cause of action exists in Illinois for breach of fiduciary duty in this situation. For reasons discussed fully above, the court grants the motion to dismiss Count III.

5. Motion to Dismiss Count IV: Fraud

Defendants make the exact same argument made by Defendants Xontal and Ralph Coxon with respect to Count IV, namely that it fails to meet Rule 9(b)'s pleading requirements. For reasons already indicated, the court denies the motion to dismiss Count IV.

D. Defendants Hawking Ltd., Leonard Hawkes, and Peter Ryder's Motion to Dismiss for Lack of Personal Jurisdiction or to Dismiss Count IV

**\*23** Defendants Hawking Ltd., Leonard Hawkes, and Peter Ryder (collectively "the English Defendants") initially moved to dismiss for lack of personal

jurisdiction or alternatively to dismiss Count IV. In their reply brief, however, they also move to transfer this action to the District of Maryland by fully incorporating Defendant Timothy Coxon's and Hawking LLC's arguments. They also move to dismiss Counts II and III, which they initially understood to not include them as Defendants. Plaintiff, not surprisingly, argue that this court has personal jurisdiction over the English Defendants and that Counts II, III, and IV state a claim for relief. The court looks to the issues in turn.

1. Motion to Dismiss for Lack of Personal Jurisdiction

The court has already detailed the requirements of finding personal jurisdiction over the English Defendants, whose nomenclature identifies them as nonresident defendants. *See supra* Part II.B.1. They argue that general jurisdiction is lacking because all of their contacts with Illinois arose out of their former business relationship and Hawking Inc., one of Clearclad's predecessor corporations. Since 1994, the English Defendants claim that they have had no direct contact with Illinois. Specific jurisdiction, they contend, is also unwarranted because none of the alleged wrongdoing occurred in Illinois. Lastly, they maintain that jurisdiction is inappropriate because they did not "enter" Illinois, as supposedly required by the courts in this district.

a. General Jurisdiction

It is uncontroverted that the English Defendants are all citizens of the United Kingdom. Neither Hawkes nor Ryder have ever lived or maintained a residence in Illinois; owned real property in Illinois; maintained offices or bank accounts in Illinois; maintained a telephone number in Illinois; voted or been liable for income taxes in Illinois; or held a job in which either one was based in Illinois. (Hawkes Aff. ¶ 9; Ryder Aff. ¶ 5.) Similarly, Hawking Ltd. has never been licensed or registered to do business in Illinois; owned real property in Illinois; or been liable for payroll or other taxes in Illinois. (Hawkes Aff. ¶ 10.) Plaintiff does not address whether the English Defendants' pre-1994 activities could provide a basis for general jurisdiction. Contacts before the time of the alleged wrongdoing are not, however, ordinarily part of the court's consideration in establishing general jurisdiction. *See Sara Lee Corp. v. Interstate*

Not Reported in F.Supp.2d                                                Page 20
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*Warehousing, Inc.,* No. 96 C 5375, 1997 WL 189308, at *2 (N.D.Ill. Apr. 15, 1997) (because the defendant had ceased all Illinois activities before injury to the plaintiff, no general jurisdiction); *cf. Scherr v. Abrahams,* No. 97 C 5453, 1998 WL 299678, at *5 (N.D.Ill. May 29, 1998) (contacts before the allegedly infringing journal was created are not basis for special jurisdiction because the suit could not have arisen from those contacts). Additionally, Plaintiff's claim that the English Defendants have been "present in Illinois on many occasions" is not sufficient to meet the high standard of showing the continuous and systematic business contacts needed for general jurisdiction.

b. Specific Jurisdiction

**\*24** According to the English Defendants, absent allegations that the party took action in Illinois to advance the alleged wrongs, this court cannot exercise specific jurisdiction over them. Plaintiff submits that the "facts amply establish personal jurisdiction over the Hawking Ltd. parties for unfair competition and other tortious conduct," (Response to Motion to Dismiss for Lack of Personal Jurisdiction of Defendants Hawking International, Ltd., Leonard Geoffrey Hawkes and Peter Ryder and Alternative Motion to Dismiss Count IV (hereinafter "Pl. Response to English Def. Motion"), at 3), and then details their alleged wrongdoing. Plaintiff's response misses the mark-jurisdiction is not an issue of whether the facts establish the basis for the claims, but whether these defendants held minimum contacts with Illinois such that exercising personal jurisdiction over them comports with due process.

Plaintiff proposes an alternative means of imposing jurisdiction, namely a "national contacts" analysis, which it urges the court to follow. Under the theory of "national contacts" or "aggregate contacts," to impose jurisdiction over a foreign defendant being sued on a federal cause of action, the court may consider its contacts with the United States as a whole as opposed to its contacts only with the forum state. *Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1268 (6th Cir.1984) (citation omitted); *see also United Rope Distributors Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 534 (7th Cir.1991). Courts will not make such an inquiry, however, in the absence of statutory authority for nationwide or worldwide service of process. *See e.g., Wells Fargo*

*& Co. v. Wells Fargo Exp. Co.* 556 F.2d 406, 418 (9th Cir.1977); *Miller Pipeline Corp. v. British Gas plc,* 901 F.Supp. 1416, 1421 (S.D.Ind.1995); *DeJames v. Magnificence Carriers, Inc.,* 491 F.Supp. 1276, 1282 (D.N.J.1980). Because the Lanham Act, the federal question in this case, does not grant nationwide service of process, *see Wells Fargo,* 556 F.2d at 419, the court will not apply the "national contacts" analysis to establish personal jurisdiction.

In any event, this court has already determined that under *Janmark,* injury in the forum state, even if resulting from tortious acts outside the state, may support a finding of specific jurisdiction. *See supra* Part II.C.1.a. Plaintiff here alleges injury in Illinois resulting from, among other torts, alleged diversions of sales and misuse of trade secrets by the English Defendants. Even absent *Janmark,* the court notes that several facts regarding the English Defendants support a finding of personal jurisdiction. First, all three were parties to a settlement agreement with Plaintiff that is at the heart of some of the claims, an agreement explicitly governed by Illinois law. Defendants Hawkes and Ryder were one time members of the corporate board of Plaintiff's predecessor, an Illinois corporation. Hawking Ltd. was also a party with Plaintiff to a distribution agreement and at one time owned shares in Plaintiff. The court therefore finds that personal jurisdiction over the English Defendants is proper.[FN12]

> FN12. Although not raised by the parties, the court notes that another basis for specific jurisdiction may exist in this case. Counts II, III, and IV are based on an alleged conspiracy, and thus what is referred to as the "conspiracy theory of jurisdiction" is applicable. Under this theory, "a court may assert jurisdiction over all of the co-conspirators, both resident and non-resident, based on their involvement in a conspiracy which occurred within the forum." *United Phosphorus, Ltd. v. Angus Chem. Co.,* 43 F.Supp.2d 904, 912 (N.D.Ill.1999) (citation omitted). To meet the standard, the plaintiff must: (1) make a prima facie factual showing of conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pursuant to the conspiracy in the forum. *Id.* (citing *United States v. Sasson,* 62 F.3d 874, 886 (7th Cir.1995);* other citation omitted). If all three requirements are met, even a foreign defendant with no real contact with the forum state and no direct business relations tied to the forum state would be subject to the court's jurisdiction. *Id.* On the other hand, a mere assertion that a corporate defendant participated in a conspiracy and that another member of the conspiracy committed a tort in the forum state is insufficient to impose jurisdiction on the absent co-conspirator. *Id.* (citation omitted). As the issue was not discussed by the parties here, the court will not address the matter further.

c. Fiduciary Shield Doctrine

**\*25** The individual English Defendants contend that jurisdiction over them is precluded by the fiduciary shield doctrine. As noted above, this is an equitable and discretionary doctrine. And in the court's view, Defendants Hawkes and Ryder are not entitled to its protection. They were both officers of Hawking Ltd. with discretion to act, and there is no indication that they were told to conduct business in a certain way (i.e., to negotiate a business relationship with Hawking LLC). Hence, the court declines to apply the fiduciary shield doctrine.

2. Motion to Transfer Venue

The English Defendants simply incorporate the arguments made by Defendants Timothy Coxon and Hawking LLC for transfer of this case to the District of Maryland. For reasons already discussed, the court denies the motion to transfer.

3. Motion to Dismiss Count II: Breach of Covenant not to Compete in Agreement

The English Defendants incorporate the arguments made by Defendants Timothy Coxon and Hawking LLC and offer no additional reasons why the motion should be dismissed. Therefore, as with the other Defendants, the court denies the motion to dismiss Count II.

4. Motion to Dismiss Count III: Breach of Fiduciary Duties

The court has already determined that no cause of action exists for a breach of fiduciary duties under these circumstances. The motion to dismiss Count III is granted.

5. Motion to Dismiss Count IV: Fraud

The English Defendants urge dismissal of count IV for failing to plead fraud with the particularity required by Rule 9(b). They contend that Plaintiff fails to identify even a single statement made by them to plaintiff or on which plaintiff relied to its detriment. Plaintiff responds that it has made such allegations.

The only allegation tangentially related to the English Defendants is Plaintiff's claim that in April 1998, Timothy Coxon called on a Clearclad customer with Geoffrey Hawkes and attempted to sell it products that were competitive with Clearclad products. (*See* Compl. ¶ 43.) One instance of alleged fraud is sufficient to meet the pleading requirements, but this single allegation fails to identify what the alleged misrepresentation was. If the encounter was an attempt to divert sales from Clearclad, that may be a basis for claims for unfair competition or breach of the non-compete clause. It is not, however, a basis for fraud. The court therefore grants the English Defendants' motion to dismiss Count IV.

*CONCLUSION*

For reasons discussed above, the court denies the motions to dismiss for lack of personal jurisdiction as to all Defendants; denies the motions to transfer venue as to all Defendants; denies the motion to dismiss Count II as to all Defendants; grants the motion to dismiss Count III as to all Defendants; and grants the motion to dismiss Count IV as to the English Defendants and denies it as to the other Defendants.

N.D.Ill.,1999.
Clearclad Coatings, Inc. v. Xontal Ltd.
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 652030 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.