# Exhibit 21

Not Reported in F.Supp.  
Not Reported in F.Supp., 1989 WL 134299 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp., 1989 WL 134299)**

Page 1

Bankers Leasing Ass'n, Inc. v. Lambert  
N.D.Ill.,1989.  
Only the Westlaw citation is currently available.  
United States District Court, N.D. Illinois, Eastern Division.  
BANKERS LEASING ASSOCIATION, INC., Plaintiff,  
v.  
David M. LAMBERT, Barnett & Alagia, and Alagia, Day, Marshall, Mintmire & Chauvin, Defendants.  
**No. 88 C 7623.**

Oct. 13, 1989.

*MEMORANDUM OPINION*

WILL, District Judge.

**\*1** Defendants have asked for a transfer pursuant to 28 U.S.C. § 1404(a) which provides that an action may be transferred for "the convenience of the parties and witnesses, in the interest of justice ... [to] any other district or division where it might have been brought." The movant has the burden of proof on the transfer question, *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986), and the plaintiff's choice of forum weighs against transfer. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, ... and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey,* 796 F.2d at 220 (citations omitted). Factors favoring transfer in the interest of justice are: the litigants will receive a speedier trial by the transferee court, related litigation is going on in a court with which the transferred case could be consolidated, and the transferee court is familiar with the governing state law. *Id.* at 221. Interest of justice factors relate to the efficient administration of the courts. *Id.* The consolidation of similar cases furthers this goal, in part, by preventing the possibility of inconsistent findings and conclusions in different courts.

In the present case, Bankers Leasing Association, Inc. ("Bankers") filed an action in this court against Lambert, his law firm (Barnett and Alagia) and the successor to that firm (Alagia, Day, Marshall, Mintmire & Chauvin) on September 2, 1988. In May 1989, Freedom, N.Y., Inc. ("Freedom") and its president and sole shareholder, Henry Thomas, filed an action against the same defendants (collectively designated "Lambert") in the United States District Court for the District of Columbia. On July 10, 1989, Lambert filed a third-party complaint in that action against Bankers pleading breach of contract, indemnification, contribution, and interpleader.

*Convenience of Parties and Witnesses.*

Both parties argue that the "key" witnesses are in the jurisdiction in which they wish the case to stay. Defendants' Memor. in Support of Motion to Transfer at 4-7; Plaintiff's Memor. in Opposition at 4-5. Lambert alleges that six important witnesses to the case are not subject to the subpoena power of this court, although they could be reached by compulsory process in the District of Columbia. Bankers responds that some of those parties have already agreed to appear in this action and the others have been deposed. In addition, Bankers notes that there are five non-party witnesses in Chicago who are not subject to the District's subpoena power.

The convenience question is not difficult so long as Bankers is a party in the District case and must be there whether we transfer this action or not. On the other hand, Lambert may not force a transfer on Bankers by filing a nonmeritorious third-party complaint. We cannot conclude, however, as Bankers would like us to, that all of the Lambert claims

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

against it are frivolous. Some of Lambert's claims may well have merit, but because we have little information on which to judge the merits of the third-party complaint, we will consider the factors in favor of a transfer without assuming that Bankers will remain a third-party defendant in the District action throughout the proceedings. Because there are not substantially more necessary parties or witnesses in either jurisdiction, the convenience factor does not resolve the transfer question. We turn to other considerations.

*Relationship Between Cases and Possibility of Inconsistent Adjudications.*

**\*2** Both actions relate to attempts by the Defense Logistics Agency of the Department of Defense (the "DLA"), Freedom, a defense contractor, and Lambert to compromise a dispute over government progress payments allegedly owed to Freedom. Freedom had obtained a contract in November 1984 to assemble combat rations and received account receivable financing in February 1985 from Bankers. After the DLA suspended progress payments to Freedom for the second time, Freedom certified a claim against the DLA. However, in May 1986, the DLA and Freedom reached a new agreement (Mod 25) which included the release of Freedom's claim against the DLA.

In addition to that agreement, Bankers alleges in the case before us that Lambert told Bankers' agents that the DLA had entered into a side agreement guaranteeing the $2,700,000 in advances which had been made by Bankers to Freedom above the contract price and protecting Bankers against Freedom cost overruns. Bankers alleges fraud, negligent misrepresentation, breach of fiduciary duty and malpractice against Lambert based on these representations of the existence of a side agreement and of the provisions in it. In addition, Bankers alleges that Lambert represented he would try to obtain a V-Loan for Bankers and lobby Congress to give Freedom another defense contract, at a time when he knew that Bankers could not get a V-Loan and that Freedom could not qualify for the MRE VII defense contracts.

Bankers did not get a V-Loan, Freedom was not awarded an MRE VII contract and Freedom went out of business, defaulting on its obligations to Bankers. Bankers seeks to hold Lambert responsible for these damages.

Freedom's action in the District of Columbia alleges that Lambert should be held liable to Freedom for representing the existence and enforceability of the side agreement. Freedom alleges that, as a result of Lambert's representations, it released its claims against the government. Damage followed, because "Plaintiffs were unable to obtain any additional financing to stay in business and was [sic] unable to fulfill any contracts with the Government and Plaintiffs were caused to go out of business." Freedom Complaint at ¶ 22. Lambert's Third-party Complaint alleges that Bankers owes it fees "for the legal services rendered," *id.* at ¶ 13, that Bankers breached its agreement to "work together in a joint effort to assist Freedom so that it remained a viable business entity,"*id.* at ¶ 14, and to provide Freedom an unrestricted line of credit. *Id.* at ¶ 15.

The close relationship between these two cases is not difficult to see since they are both claims against the same defendant for the same conduct. At least some of the statements made by Lambert were made in the presence of both Freedom and Bankers agents. Although Bankers argues that this factual overlap is small, inconsistent factual determinations could result as to the content of those representations. In addition to these statements, Lambert's state of mind will be relevant in both actions, and the relationship between his alleged duties to Bankers and to Freedom must be sorted out. For instance, Bankers complains that "Lambert, while acting at the direction and on behalf of Freedom, sought to obtain the commitment of Bankers to continue to provide financing to Freedom by representing to Bankers that: a. A 'side agreement' ... existed," Bankers' Complaint at Count I, ¶ 15, while the allegation in the Freedom case is that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Lambert harmed Freedom by his intentional misrepresentations and/or negligence regarding the existence of a side agreement. Was Lambert acting to harm or to help Freedom by his alleged misrepresentations?

*\*3* The witnesses and the evidence will be identical in substantial part in both cases. Moreover, only if the cases are in the same court can the competing interests of all the parties be resolved. The controversy here is not only Bankers' claim against Lambert but Freedom's competing claim and Lambert's possible counterclaim against Bankers. They should all be resolved at one time and place.

Lambert's state of mind (i.e., his motives for the alleged misrepresentation) will be relevant in our case in order to assess the credibility of Bankers' witnesses who testify to Lambert's statements. His state of mind is relevant in the District action on the issues of credibility and wilfulness, since Freedom has asked for punitive damages in that action. Of course, Lambert's alleged knowledge of the nonexistence of a side agreement is a necessary element of proof in both cases.

Lambert's defenses in both actions will include common facts. While denying any misrepresentations, Lambert will apparently also contend that it was unreasonable for Bankers or Freedom to rely on any of his statements, since both were privy to information about the negotiations leading up to Mod 25. Although Bankers and Freedom did not both obtain all the same information, the context of the communications is the same and will be necessary to a jury's understanding.

The two cases are related both in their factual context and with regard to damages. As an example, Bankers has alleged in our case that Lambert was its attorney or that it was a third-party beneficiary to the relationship between Freedom and Lambert. As a result, it is possible that Bankers' claim could rest on the duty Lambert owed Freedom. The factual questions regarding Lambert's representation of the parties and possible conflict of interest issues, Bankers' Complaint at Count III, ¶ 23(b), should be resolved in one forum.

Lambert contends that there is at best one fund of money and that Lambert may be burdened with double liability. This is highly unlikely although Bankers' damages for advancing money and Freedom's damages for loss of its claim against the government and for the failure of its business are theoretically separate. However, there is a relationship between Banker's rights against Freedom for unpaid obligations and Freedom's potential recovery in the District case. If Bankers is fully compensated through Freedom's recovery against Lambert, then Bankers will have no damages to plead directly against Lambert. In any event, many of the damages sought are the same in both cases and should be limited so as to prevent any double liability, another reason for having both cases in the same court.

We address briefly Bankers' arguments against transfer. Bankers states "that the possibility of inconsistent adjudications is not dispositive, but rather is only one factor to be weighed on a transfer motion, because there is *no* strong public policy interest against inconsistent determinations in our judicial system." Plaintiff's Memor. in Opposition at 11. In support, Bankers quotes a commentator's analysis of Fed.R.Civ.P. 19. Plaintiff's Memor. in Opposition at 11 (citing 3A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 19.07 (2d ed. 1985)). While a risk of inconsistent adjudications is not, in all cases, dispositive in favor of transfer, it is not insignificant and should be avoided if possible. Here, the numerous connections between the cases and the failure of Bankers to show any substantial prejudice in the transfer warrant having both cases in the same court and avoiding any possibility of conflicting verdicts.

*\*4* Bankers cites a number of cases in which it asserts that transfer was denied even though there was a threat of inconsistent adjudications. The *GTE Sylvania, Inc. v. Consumer Product Safety Commission,* 438 F.Supp. 208, 211-13 (D.Del.1977), case is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-01243   Document 33-2   Filed 04/29/2008   Page 5 of 5

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1989 WL 134299 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1989 WL 134299)**

distinguishable, since there the court found that the defendants' success in the Delaware case would end the need for the Commission to pursue its case in the District of Columbia. In addition, the court noted that the Commission could have asked for a transfer before so much effort had been expended in the Delaware case and that, in fact, "[t]he Commission expressly stipulated that this district was the 'appropriate forum' even though a comparable law suit was then pending in the District of Columbia." *Id.* at 212. Five plaintiffs who had originally filed actions in other district courts consented to transfer to Delaware in reliance on the Commission's stipulation. The case, *Alaska v. Andrus,* 429 F.Supp. 958, 963-65 (D.Alaska 1977), *aff'd,* 591 F.2d 537 (9th Cir.1979), is also distinguishable, since the court there denied transfer because of the state's interests in the wolf hunting program at issue in the case. No such state interests are raised by the case before us.

We note that Bankers' assertions of prejudice due to transfer are unsupported speculation. Bankers asserts that the case will not be tried expeditiously in the District of Columbia but cites no support for this allegation. Bankers also asserts that Lambert is using this motion as another delaying tactic which will be compounded by the filing of a motion to stay the District proceedings pending the resolution of Freedom's claim against the government. Plaintiff's Memor. in Opposition at 16-18. The problem with this argument is that it assumes that the court in the District will issue a stay. We cannot assume that a stay will be entered by the court in the District. Although we recognize that Bankers' allegations may not be litigated as quickly in the District as they might be here and that the District of Columbia court may be asked to apply Illinois law to Bankers' claims (assuming that it varies from District of Columbia law), we find that the other factors-i.e., judicial economy and avoidance of inconsistent adjudications of fact or conclusions-favor transfer.

*Conclusion*

For all the reasons stated, we find that this case should be transferred to the district court in the District of Columbia.

N.D.Ill.,1989.
Bankers Leasing Ass'n, Inc. v. Lambert
Not Reported in F.Supp., 1989 WL 134299 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.